1

```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF NEW YORK


     UNITED STATES OF AMERICA,        ) Criminal
                                      ) No. 24-492 (NRM)
                   Government,        )
                                      ) STATUS CONFERENCE
     vs.                              )
                                      ) Brooklyn, New York
     DEWITT JOHN,                     ) Date:  January 22, 2025
                                      ) Time:   1:00 p.m.
                   Defendant.         )
    ─────────────────────────────────────────────────────────────

                    TRANSCRIPT OF STATUS CONFERENCE
                            HELD BEFORE
                 THE HONORABLE JUDGE NINA R. MORRISON
                     UNITED STATES DISTRICT JUDGE
    ─────────────────────────────────────────────────────────────

                         A P P E A R A N C E S


    For the Government:      Brooke Theodora, AUSA
                             United States Attorney's Office
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York  11201
                             718-254-6342


    For the Defendant:       Jullian Harris-Calvin, Esq.
                             Federal Defenders of New York
                             One Pierrepont Plaza, 16th Floor
                             Brooklyn, New York  11201
                             718-407-7402



    Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.
    ─────────────────────────────────────────────────────────────

    Court Reporter:          Annette M. Montalvo, CSR, RDR, CRR
                             Official Court Reporter
                             United States Courthouse, Room N375
                             225 Cadman Plaza East
                             Brooklyn, New York  11201
                             718-804-2711
```

2

1          (Proceedings commenced at 10:00 a.m., in open court,
2     to wit:)
3          THE COURTROOM DEPUTY:  Case called for a status
4     conference, Case No. 24-CR-492, *USA v. Dewitt John*.
5          Counsel, please state your appearance for the
6     record, starting with the government.
7          MS. THEODORA:  Good afternoon, Your Honor.
8          Brooke Theodora for the United States.
9          THE COURT:  Good afternoon.
10         MS. HARRIS-CALVIN:  Good afternoon, Your Honor.
11         Jullian Harris-Calvin, Federal Defenders of New
12    York, on behalf of Mr. John, who has waived his presence.
13         And we have defense investigator Jessica Hernandez
14    here with us today.
15         THE COURT:  Okay.  Let me just note for the
16    record -- you can have a seat, everyone.
17         It wasn't possible to have Mr. John produced on
18    short notice, given that I got a letter from the parties
19    jointly requesting a conference today, or as soon as I was
20    able to schedule it, so I will excuse his presence, given that
21    he's now in custody.
22         All right.  So late yesterday I received a letter
23    from defense counsel, but seemed to me to be on behalf of both
24    parties, and then earlier, a less formal inquiry had been made
25    earlier, through my deputy, from the government regarding

3

1  seeking, essentially, some guidance from the Court on what to
2  do with property belonging to Mr. John that defense counsel
3  had brought to court yesterday, and which remains in defense
4  counsel's possession, now that pretrial supervision has been
5  revoked.
6              I wasn't really sure that I would be in any position
7  to give any sort of advisory ruling, which is generally not
8  appropriate, given that there's no motion before me, and I
9  gather the devices aren't covered by the search warrant.  But
10 I appreciate that both counsel are trying to honor both their
11 ethical obligations to -- under the Constitution, and to one
12 another and their clients, as well as their legal obligations
13 insofar as they apply to the Court.
14             I'm not sure I can be of any assistance in helping
15 you clarify those, but let me hear from you where you are and
16 what, if anything, I can do to assist.
17             MS. HARRIS-CALVIN:  Sure.  If it's helpful, can I
18 just kind of lay out the factual account --
19             THE COURT:  Yes.  It occurred to me you all might
20 want to make a record, given that these devices are in your
21 custody as well.  So please feel free.
22             MS. HARRIS-CALVIN:  Yes.
23             So it's going to take a second --
24             THE COURT:  Yes.  Go ahead.
25             MS. HARRIS-CALVIN:  -- and I'll try to be concise.

4

1     So on, as the Court knows, November 19 of 2024,
2 Mr. John was arrested at his home, when the FBI executed a
3 search warrant.
4     They did not seize the devices at issue here today.
5 According to Pretrial, at Pretrial intake, when Mr. John was
6 asked to list all of the devices that he has for purposes of
7 electronic monitoring under his conditions of release,
8 Mr. John gave them a list of 20 or so devices that he still
9 had in his home.  This, to be clear, was a fact that I did not
10 know until the revocation or violation memo was submitted to
11 the Court and given to the parties.
12     THE COURT:  Which part didn't you know?
13     MS. HARRIS-CALVIN:  The part about there being a
14 list of 20 devices.
15     THE COURT:  Okay.
16     MS. HARRIS-CALVIN:  So on January 10 of this year,
17 it was a Friday, Pretrial Services conducted a home visit and
18 reportedly retrieved four devices from the home and from
19 Mr. John, two Android phones and two iPhones.
20     Couple hours later, in the early afternoon, Pretrial
21 e-mailed defense counsel, stating that the agency learned,
22 apparently from processing some of these devices, that it
23 appeared Mr. John was also using either a laptop or a CPU, and
24 that Pretrial was requiring that that device and any other
25 devices be surrendered to Pretrial by 5:00 p.m. that day.

5

1  I didn't get the message, I was in court, so I
2  didn't get the message until about 3-something.  Around 4:00
3  p.m., I got in contact with Mr. John's mother, who is the
4  third party custodian, as Pretrial was having difficulty doing
5  so, that's why they had reached out to me.  And I informed
6  Mr. John's mother that she -- you know, what the issue was,
7  and she said that -- I don't believe she drives, so she said
8  she could not get to Pretrial by 5:00 p.m., and it was a
9  Friday.
10            So with Pretrial's permission, I retrieved and
11 stored another, an additional device, in my office, over the
12 weekend, and gave it to Pretrial that following Monday, which
13 was the 13th.
14            So at this point, there would be five devices in
15 Pretrial's custody.  Two Android phones, two iPhones, and now
16 this third Android phone that I surrendered.
17            Though Pretrial processed at least one or two of the
18 devices, it did not report uncovering child porn on those
19 devices.
20            So that Monday, January 13, Pretrial then filed the
21 violation memorandum to the Court, spelling out a lot of this.
22            On the 17th of this month, I submitted an opposition
23 to Pretrial's revocation request.
24            On the 19th, the government filed a letter joining
25 Pretrial's revocation request and adding additional color and

6

1 information about its investigation and evidence.  In its
2 filing, the government acknowledged the 20 or so additional
3 devices reported in Pretrial's violation memorandum.
4     The next day, which was January 20, the government
5 sought a search warrant for the five devices already in
6 Pretrial's possession.  The government did not identify these
7 20 additional devices as a target of the warrant application,
8 and the 20 devices are not included in the warrant issued by
9 Judge Merkl.
10     The government did, however, to be clear, reference
11 the existence of those 20 additional devices in the warrant
12 application.  Upon obtaining the search warrant for the five
13 devices currently in Pretrial custody, the government then
14 filed a letter to the Court that same day, the 20th, regarding
15 the search warrant and some of the issues I had noted in my
16 opposition.
17     So yesterday, in response to Pretrial's violation
18 report, Mr. John brought with him to Court a sealed cardboard
19 box contained inside of a cloth shopping bag, a red bag, with
20 the handles tied together in a knot securing the bag.
21     He noted to counsel and our investigator,
22 Ms. Hernandez who's here, that there were additional devices
23 inside the sealed box that he intended to give to Pretrial,
24 under his monitoring conditions, if he were to remain at
25 liberty in the pretrial period.

7

1    So as we all know, the Court revoked his release
2    yesterday. When the marshals took custody of Mr. John at the
3    end of the hearing, as usual, they removed all of the personal
4    property on his person and turned it over to the defense team.
5    The shopping bag with the box remained with the defense team
6    in the courtroom at that time.
7    Pretrial then asked me to turn over the devices. I
8    refused to do so, as Pretrial's relationship with Mr. John had
9    ended when the Court revoked his release.
10    Apparently the government learned very quickly of my
11    decision, and in court confirmed with me my decision not to
12    hand over the box, presumably with the devices in it, to
13    Pretrial.
14    THE COURT: When you say confirmed, what do you
15    mean?
16    MS. HARRIS-CALVIN: So --
17    THE COURT: What's your best recollection of that
18    conversation?
19    MS. HARRIS-CALVIN: I was speaking to the court
20    reporter to say that we're going to order a daily transcript
21    and -- Ms. Theodora, what's the name of your supervisor? I'm
22    sorry.
23    MS. THEODORA: AUSA Kaitlin Farrell.
24    MS. HARRIS-CALVIN: Ms. Farrell kind of waved to me
25    and said, do you plan to take these devices or that box? I

8

1 can't remember if she said "devices" or "boxes" or "bag."

2 And I said, I don't really want to, but I have to
3 now, I'm going to take them.  And she noted that I might be
4 making myself a witness, at which point I realized I was not
5 going to be returning this box to my client's home, and that I
6 wanted to return to the office, put it in the evidence locker,
7 and speak with the attorney in charge.

8 So that's exactly what Ms. Hernandez and I did.  We
9 went directly back to the office with the bag.  We have not
10 opened the bag.  I knotted the tie, not unsealed the box, not
11 taken the box out.  We went directly to the office.  Only a
12 few people in the office have a key to our evidence closet.

13 So we found that person.  She escorted us to the
14 evidence closet, opened the door.  Ms. Hernandez put the bag
15 inside the closet, backed out, the door was closed and locked,
16 and it has been there ever since.

17 At some point in the next hour or so the US
18 Attorney's Office called my supervisors about this issue.  My
19 supervisors spoke with the US Attorney's Office, and they came
20 together with this plan to come to the Court.

21 The government, as I noted in the letter, believes
22 that Pretrial should hold these as they seek a search warrant.

23 And then today, Ms. Theodora, do you want to give an
24 update about the subpoena?

25 MS. THEODORA:  Yes.  Why don't you continue, and

9

1  then I can --
2              MS. HARRIS-CALVIN:  Okay.
3              And so I believe Pretrial is not the repository of
4  evidence or potential evidence that the government may or may
5  not obtain a warrant for.  I am keeping it in the possession
6  of the Federal Defenders in that locked secure evidence
7  closet.  Out of an abundance of caution, because I know the
8  government is going to seek a search warrant, I am an officer
9  of the court, and I do not plan to do anything with this box.
10 Ms. Hernandez has created a chain of custody form that goes
11 along with the box, and so that's where I stand, as Mr. John's
12 counsel.
13             And I think I answered your question.
14             THE COURT:  Yes.  I think that's the status.
15             So tell me what -- I certainly understand, as I
16 indicated, given what transpired, why you may wish to make a
17 record.  But it sounds as though, since there's no application
18 before me, at least on your end, you are not seeking a ruling
19 from me or anything else, other than to inform me what you
20 have done, put on the record what you have done, and the
21 reasons why you believe that is appropriate within your legal
22 and ethical obligations, given your understanding of
23 Pretrial's authority to request the surrender of Mr. John's
24 personal property, in your view.  And I take no view on it,
25 sitting here, since it hasn't come up in any of my cases yet,

10

1  I haven't researched it, but I certainly understand your
2  general assertion that since Pretrial supervision has
3  terminated, now that I have revoked his bond, there's no cause
4  for Pretrial to seize any of his property to determine if he's
5  complying with the conditions of bond.
6              MS. HARRIS-CALVIN:  That's correct.  And when I
7  say -- I think there's three options.  One, we can continue to
8  hold on to the box in our secured evidence closet, unless and
9  until the government gets a search warrant.  At which point,
10 if they notify us they have a warrant, we are happy to
11 coordinate bringing it directly to their office, having the
12 agent come meet us.  Obviously, we'll very promptly surrender
13 whatever is the subject of the search warrant.
14             The second is, of course, Pretrial holding on to it,
15 as the government is requesting.
16             And I think the third is the government gets a
17 subpoena somehow, and, then again, of course, I will comply,
18 our office will comply with that.
19             I think the reason we are coming before you is I
20 don't know if there's an agreement between our two offices.
21 And I think my supervisor and opposing counsel's supervisor
22 decided that it was best to bring this before the Court and
23 see if the Court had a position on where this box should sit.
24 I believe the government is very promptly seeking a warrant.
25 So I don't know if it would be very long.

1      THE COURT:  Okay.  What's the status of the warrant
2  request or application?  Is defense counsel right that you
3  intend to seek a warrant from whichever judge is on criminal
4  duty this week?
5      MS. THEODORA:  Yes.  We do intend to seek a warrant.
6  We have not applied for the warrant yet.  Given our discussion
7  with the Court yesterday, we wanted to have this discussion
8  first.  But, yes, we intend to follow what Rule 41 requires of
9  us, and we intend to seek a warrant before the duty
10 magistrate.
11     THE COURT:  Okay.  And now that you've heard defense
12 counsel's more detailed and on the record recitation of what
13 action she took and chain of custody insofar as they've
14 recounted it, do you have any concerns about it remaining in
15 the Federal Defenders' evidence locker under those conditions,
16 while you seek a warrant application?
17     MS. THEODORA:  Sure.
18     So let me just lay out my general concerns, how
19 about that, and then I think if that's what counsel wants to
20 do, I think we're okay with that.  But let me also just state
21 for the record what our thinking was about the three options.
22     So from our perspective, there are two issues with
23 the hard drives.  One is that we think it's likely they
24 contain child sexual abuse material, and that can open someone
25 up to criminal liability to possess it.  And, also, it needs

1  to be secured -- it needs to be -- for victim safety reasons,
2  it needs to be stored in a secured location at the FBI so that
3  it doesn't leak or become disclosed in any manner.  I am kind
4  of saying those generally.  I am not saying those are
5  happening right -- those concerns are both like happening
6  concretely right now.  I just say, in general, those are our
7  concerns about that.  And then the other is that we do intend
8  to seek a search warrant.  We think we're likely to be
9  successful in seeking a search warrant, and we would very
10 strongly prefer not to have to execute a search warrant at the
11 Federal Defender's office.
12          So those are our general concerns.  Counsel, I think
13 she represented on the record and she represented before, that
14 she's willing to hand over the hard drives to us outside of
15 her office, in the event we get a search warrant.  So I think
16 we're okay with that, for now.
17          THE COURT:  And would -- I mean, even -- I don't
18 want to tell you all how to do it, but if you get a warrant,
19 notify counsel of that fact, you make the arrangements, even
20 to have some representative either from your office or the FBI
21 come in, you know, one person come into the office,
22 potentially, see how it is stored, locked, view for
23 themselves, so that way defense counsel isn't the only person
24 who could testify to or affirm sort of where it was found and
25 what the storage looked like, something along those lines.

1  MS. THEODORA: Yes. I think that --
2  THE COURT: Obviously not a swat team to go execute
3  a warrant they are complying with, but an individual on the
4  government side who can confirm where this is stored at the
5  time they collect it.
6  MS. THEODORA: Yes. I think that --
7  THE COURT: And also someone's who's got the
8  requisite level of security clearance to take possession of
9  something that at that point a magistrate judge would have
10  found there is probable cause to believe there is some
11  evidence of a crime contained therein.
12  MS. THEODORA: Yes. I think that's fine.
13  I also just want to note for the record, counsel
14  mentioned the three options. We agree. The three options
15  are, one, counsel hands them over to Pretrial Services. Two,
16  we have a grand jury subpoena here for them. She can hand
17  them over to Agent Hampsch. They can coordinate together.
18  And then we will not look at them until we get -- unless and
19  until we get a search warrant. And the third is that, as she
20  mentioned, she can keep them.
21  We're okay with the third option. I did want to put
22  on the record that that may open her up to a conflict, because
23  it could put her as a witness in the chain of custody. But I
24  just want to put that on the record, and I think --
25  THE COURT: So without getting into and giving any

14

1  kind of advisory ruling on whether there would or would not be
2  a conflict on any issue related to defense counsel's
3  possession, it does seem to me that given that the events that
4  she's just described, any grounds for such a conflict kind of
5  already existed before we began this conference today.
6  Meaning, she's acknowledged that she took possession of those
7  devices, as she did with her other client's other personal
8  property that he brought to court when he was remanded.
9        They are now in what she's described, and we all
10 have no reason not to credit, a secure location.  So I think
11 changing the location now wouldn't undo the basis for those
12 concerns, if they ever existed.  And I am a little concerned
13 that it might only create more confusion and still yet another
14 event in the chain of custody to account for.
15       So I think -- it sounds like there may not be any
16 need for a ruling, if both parties are in agreement that -- I
17 think what you described as the first option, but essentially
18 keeping them where they are while the government endeavors to
19 get a subpoena for some or all of the devices.  I certainly
20 don't have a problem with that, if that's what you are all
21 agreeing to.  And, you know, we can certainly, if the
22 government hasn't obtained one within some designated period
23 of time, we can revisit the question of what should happen
24 with the property.
25       But let me ask defense counsel if you have any

1    concerns about that.  Or perhaps it's the one you proposed?
2            MS. HARRIS-CALVIN:  No, I don't have any concerns.
3    I would just say that our defense investigator has had custody
4    the whole time I have it.  It is not just me in a vacuum.
5            THE COURT:  I know, she was here yesterday, and so
6    there are two individuals, only one of whom is an attorney who
7    could be a witness, if that was ever a question or an issue.
8            MS. HARRIS-CALVIN:  Yes.
9            And I do think that our office is little disinclined
10   to have an FBI agent walking around.
11           THE COURT:  Understood.
12           MS. HARRIS-CALVIN:  And so if --
13           THE COURT:  As I said that, I realized I might have
14   been going overboard to address a concern that may not exist.
15           I will let you all -- let's do this.  Let's not get
16   into that as a speculative thing.  I am certainly not
17   directing that that be the case.
18           MS. HARRIS-CALVIN:  Okay.
19           THE COURT:  I think at this time what makes the most
20   sense is I will -- I certainly have no issue with the parties'
21   agreement to keep the items where they are.  I am glad we made
22   a record of what transpired while it's fresh in everyone's
23   minds.  And let's see if the government gets its warrant
24   within the next three weeks.  If in 21 days there's no change
25   in the circumstances, then you can come back to me, to the

16

1  extent you can't figure out another solution on your own.  And
2  if and when the warrant is executed or the warrant is
3  obtained, I don't think you need to come back to me to talk
4  about how it is executed.  I think you can confer with one
5  another about the least intrusive and most professional way to
6  ensure that it is complied with at that point.
7           Okay?
8           MS. HARRIS-CALVIN:  Thank you so much, Your Honor.
9           THE COURT:  All right.  You're welcome.  Take care.
10          MS. THEODORA:  Thank you.
11          (Proceedings concluded at 1:24 p.m.)

* * * * *

**REPORTER'S CERTIFICATE**

I, ANNETTE M. MONTALVO, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings.

Dated this 20th day of February, 2025.

/s/Annette M. Montalvo
Annette M. Montalvo, CSR, RDR, CRR
Official Court Reporter