# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

April 28, 2026

The Honorable Denny Chin
Visiting Second Circuit Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *United States v. Dewitt John*, 24 Cr. 492 (DC)

Your Honor:

I write as standby counsel for Dewitt John to submit the attached motion for reconsideration of the Court's denial of Mr. John's suppression motion.

Respectfully Submitted,

Jullian Harris-Calvin
Assistant Federal Defender
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718) 407-7402

Standby Counsel to
*Pro Se* Defendant Dewitt John

cc:   AUSAs Brooke Theodora & Sarah Elardo (via ECF)

April 28, 2026

The Honorable Denny Chin
Visiting Second Circuit Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *United States v. Dewitt John*, 24 Cr. 492 (DC)

Your Honor:

The defendant respectfully moves this court for reconsideration of its order denying an evidentiary hearing on the pending motion to suppress. Reconsideration is warranted because the record before the court contains genuine, material disputes that cannot be resolved on the papers, and because the court itself has acknowledge the central technical question - whether evidence of the subject offense would, as a matter of probability, persist on the subject devices rather than reside on remote cloud servers - is one that requires credible expert evidence. That expert evidence cannot be developed, presented, or weighed on a paper record—it can only be developed at a hearing.

Two independent grounds compel reconsiderations. *First*, the warrant at issue fails to establish a fair probability that evidence of the charged offenses will be found on the subject devices. The communications and platforms identified in the affidavit, iMessage, Instagram, and Cash App are cloud-based services whose data persistence on any individual endpoint, which is determined by a platform retention policy and user configuration, not by mere possession of a device. The defense was unable to make this technical showing through a credible expert. *Second*, the court has implicitly resolved a contested factual and clinical question, without the benefit of expert testimony; namely, whether the defendants' statements to the agents on November 19, 2024, were knowing and voluntarily, or were instead the product of cognitive impairment caused by sleep inertia. The Court is not, and does not hold itself out as, a sleep medicine or cognitive psychology expert. Similarly, the defendant is also not such an expert. The rule announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the body of voluntariness jurisprudence beginning with *Ashcraft v. Tennessee*, 322 U.S. 143 (1944) require more.

For the reasons set forth below, the defense requests that the court vacate its denial of an evidentiary hearing and set the matter for a suppression hearing at which both technical (data-persistence and cloud-architecture) and clinical (sleep inertia and voluntariness) evidence may be developed.

1

## I. THE GOVERNMENT HAS NOT ESTABLISHD A FAIR PROBABILITY THAT EVIDENCE OF THE SUBJECT OFFENSES RESIDES ON THE SUBJECT DEVICES.

### A. Probable Cause Requires a "Fair probability" of Evidence in the place to be searched

The Fourth Amendment forbids the issuance of any warrant absent probable cause to believe that evidence of a crime will be found in the particular place to be searched. The probable cause inquiry is not satisfied by a generalized showing that a defendant has committed a crime; it requires a particularized showing of a "fair probability" of a nexus between the suspected criminal activity and the specific place identified in the warrant. *See United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008). In the digital context, the Second Circuit has been explicit: a warrant to search digital storage media is constitutionally invalid where the affidavit does not establish a nexus between the suspected conduct and the medium being searched. *See United States v. Galpin*, 720 F.3d 436, 447-48 (2d Cir. 2013) (collecting authorities and emphasizing the particular danger of overbroad device searches given the volume and intimacy of data on modern electronic devices). The Supreme Court reaffirmed this concern in *Riley v. California*, 573 U.S. 373 (2014), where it observed that "the data a user views on many modern cell phones may not in fact be stored on the device itself" but rather "in the cloud", *id.* at 397. Making the device versus cloud distinction a matter of express constitutional concern. An IP address cannot lead to a medium or particular device as hundreds or thousands of users and devices can be attributed to a single IP address on a global scale. No singular device has unique IP on the internet to point to that device.

### B. Modern architecture defeats the inferential leap from account to device

In her affidavit, Agent Hampsch proceeds on a syllogism that does not survive technical scrutiny: (1) the defendant communicated with the alleged victims using iMessage, Instagram and Cashapp; (2) these communications constitute evidence of the subject offenses; therefore (3) the SUBJECT DEVICES likely contain that evidence. The middle inferential step is missing. Each of the named platforms is a cloud-based service. The data that constitutes the alleged evidence is, in the first instance, stored on the platforms' remote servers not on any particular endpoint device. Whether a copy of that data exists on a given device at a given moment is a function of (i) the platform's data retention and synchronization policy, (ii) the users account-level settings, (iii) the user's device level settings (cache size, message expiration, automatic deletion), and (iv) the device's storage state. The affidavit does not address any of these technical variables. iMessage data similarly is synchronized across Apple devices via iCloud and is governed by user-controlled settings ("Messages in iCloud," device level retention windows of 30 days / 1 year / forever). Instagram messages reside on Meta's servers. the application is a thin-client. Reddit and Discord are browser or thin-client accessible services whose substantive content lives entirely on remote infrastructure. None of this is exotic; it is the baseline architecture of every consumer communications platform identified in the affidavit.

2

### C. The affidavit itself Concedes the Multi-Device Sync Problem

In the affidavit, the agent states that "iMessage, Instagram, and Cash App are applications that can be used from multiple devices and sync across multiple devices." That sentence is fatal to the government's nexus theory. If the same data may exist on any device which the user logs in and may not exist on any device which the user has logged out, cleared the cache, or never installed the application, then the existence of an account does not, without more, establish probable cause to believe that data resides on any particular device. Possession of valid login credentials is, in this sense, a candidate container; no particular device is a probable container. The government is not without remedy: it has, by its own admission, served administrative process and continues to litigate stored Communications Act process against the platform server, a device warrant supported only by an account existence theory does not satisfy *Gates* and *Falso*.

### D. The Courts invitation confirms a hearing is required

The defense may make its case by presenting testimony. But expert evidence on cloud architecture, platform retention policy, device level caching behavior and forensic recoverability is the exact category of testimony that cannot be presented or evaluated on paper record. It must be tendered live, qualified under Federal Rules of Evidence 702 and *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and tested by cross-examination. The Court's invitation thus requires the hearing it has so far decline to grant.

## II. THE COURT CANNOT RESOLVE THE VOLUNTARINESS OF THE STATEMENTS WITHOUT EXPERT TESTIMONY

### A. Sleep Inertia and sleep deprivation are recognized cognitive impairments.

The peer reviewed scientific literature establishes that an individual may be awake and physically functioning, able to walk, speak and follow simple instructions, and perform rudimentary tasks while simultaneously suffering measurable cognitive impairment in the domains most relevant here: working memory, inhibitory control, and the capacity for considered responses to authority figures. *see, e.g.* Dawson & Reid, Fatigue, alcohol cognitive and performance impairment, Nature 388:235 (1997); Krizan et al., sleep deprivation and self control, Personality and Social Psychology Review (2022) (meta analysis of sleep deprivation effects on executive function and behavioral self-regulation). The phenomenon known as sleep inertia - the period of transitional cognitive impairment immediately following abrupt awakening - is independently well-documented in the sleep medicine literature and is associated with reduced reaction time, impaired decision making, and compromised recall, with measurable effects persisting for thirty minutes or longer. These are not litigation driven novelties. They are established baseline of the field. Their relevance to this case is direct: the defendant is alleged to have made statements in the morning willingly and voluntarily in waiver of his Miranda rights. Whether those statements were in fact knowingly and voluntarily made or whether they reflected the defendant's impaired cognitive state is a clinical question the court cannot resolve on the

affidavit's say-so. The court cannot make assumptions about the state of the defendant in "an adrenaline situation."

### B. The voluntariness inquiry has a constitutional dimension

The cognitive condition of an individual at the time of statements made to law enforcement or its agents is not merely evidentiary; it is constitutionally cognizable. The Supreme Court has long recognized that statements obtained from individuals under conditions of sleep deprivation are constitutionally suspect. *See Ashcraft v. Tennessee*, 322 U.S. 144, 154 (1944) (statements obtained after 36 hours of continuous interrogation without sleep deemed inherently coerced.

### C. The court is not and cannot be an expert

The Court does not hold itself out as an expert in sleep medicine, sleep inertia, the cognitive effects of acute or chronic sleep deprivation, or the differential diagnosis between impaired cognition and deliberate dissimulation. The Court is not required to be. What the Court is required to do, before adopting the government's characterization of the defendant's conduct as knowing and voluntary, is to permit the development of a record on which a credentialed expert may offer testimony, the government may cross-examine, and the court may make findings in accordance with Rule 702. The defendant himself possesses technical knowledge regarding the cognitive phenomena at issue. The defendant acknowledges that the court needs not and likely should not make findings based on the defendant's technical assertions. A person can be awake and functioning but impaired, and the line between the two is one that requires expert articulation. The defense intends to retain a technical qualified expert in cognitive psychology to testify. That expert testimony can only be adduced at a hearing.

## III. CONCLUSION

Mr. John requests that the court reconsider its order denying his motion to suppress.

Respectfully Submitted,

_____//s//_____

Dewitt John
*Pro Se* Defendant

Cc:    AUSAs Brooke Theodora & Sarah Elardo (Via ECF)
       Clerk's Office (via ECF)

4