UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA, : 24-CR-492 (DC)
:
Plaintiff, :
: United States Courthouse
-against- : Brooklyn, New York
:
DEWITT JOHN, :
: Wednesday, April 29, 2026
Defendant. : 10:00 a.m.
- - - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE DENNY CHIN
UNITED STATES CIRCUIT JUDGE SITTING BY DESIGNATION

A P P E A R A N C E S:

For the Government: JOSEPH NOCELLA, JR., ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: BROOKE THEODORA, ESQ.
SARAH A. ELARDO, ESQ.
KAITLIN T. FARRELL, ESQ.
ASSISTANT UNITED STATES ATTORNEYS

For the Defendant: DEWITT JOHN
*PRO SE* DEFENDANT

AND

FEDERAL DEFENDERS OF NEW YORK, INC
One Pierrepont Plaza
16th Floor
Brooklyn, New York 11201
BY: JULLIAN HARRIS-CALVIN, ESQ.

Court Reporter: DAVID R. ROY, RPR
225 Cadman Plaza East
Brooklyn, New York 11201
drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand, transcript produced by Computer-Assisted Transcription.

P R O C E E D I N G S

--ooOoo--

(In open court.)

THE COURTROOM DEPUTY: All rise.

United States District Court for the Eastern District of New York is now in session. The Honorable Denny Chin is now presiding.

Criminal cause for a hearing on The United States versus John, Docket 24-CR-492.

Could I have the appearances for the Government, please.

MS. THEODORA: Good afternoon, Your Honor. Brooke Theodora for the Government. I'm joined by AUSA Kaitlin Farrell, AUSA Sarah Elardo, and Special Agent Audra Hampsch.

THE COURT: Good morning.

MS. THEODORA: Good morning, Your Honor.

THE COURT: Thank you.

For the defense?

MR. JOHN: Yeah. For the Defendant, Dewitt John, I'm *pro se*, with Jullian Harris-Calvin.

THE COURT: Good morning.

MR. JOHN: Good morning.

THE COURT: All right. Thank you. Please be seated.

All right. So we have motions in *limine*, then we have some housekeeping to discuss in preparation for the trial.

Actually, before we get to the motions in *limine*, we received last night Mr. John's motion for reconsideration of the Court's denial of his suppression motion. I had time to review it. The motion is denied. There's really nothing substantive that's been added to what was already raised before. I considered the matters carefully when we had the hearing and I have reviewed the recording. We're supposed to start trial on Monday. For all these reasons, the motion for consideration is denied.

Turning to the motions in *limine*. The Government's Motion Number 1 regarding disclosure of the victims' names and identifying information, the motion is unopposed; therefore, it was granted.

Now, the Government's memo at Pages 13 to 14 lay out the different items. Do we need a written order or shall I -- I can just read them into the record or how do you want to do this?

MS. THEODORA: Your Honor, we believe you can just read them into the record.

THE COURT: Okay.

All right. The motion is hereby granted. And I am issuing a protective order now restricting the disclosure

of the victims' identities as follows: The victims' full names may not be used. They may only be identified by their first names or a pseudonym. With respect to Jane Doe 2, she will be referred to -- she may only be referred to as Jane Doe during the trial. And Jane Doe 1 will be referred to -- may only be referred to as "Kaliah," K-A-L-I-A-H.

Second, the parties may not disclose any information that tends to identify the victims, such as their addresses, phone numbers, online messaging and/or social media user names, and their school or places of employment if any;

In addition, the parties may not disclose the names and identifying information of any of the victims' parents or relatives, and requiring that any parents who testify may be identified only by their first names or a pseudonym here at trial;

In addition, any victims identified in the pretrial filings, including the parties' motions in *limine*, or any other nontrial court proceeding may only be referring to as Jane Does or with -- but with numbers following the Jane Doe. Any trial exhibits reflecting the above information will be sealed or redacted from the public and not published in unredacted form to the gallery. And the Government may redact from the trial transcripts Jane Doe's

first name, the first name of -- I'm sorry. The trial transcript Jane Doe 1's first name, the first name of Jane Doe 2's parents, at least one of whom the Government intends to call at trial, and any other information that tends to identify any of the victims in this case in light of the need to protect Jane Doe's 2's anonymity. Okay. And so that is so ordered.

The Government's Motion *in Limine* Number 2 is also unopposed; and therefore, that is granted: Any child pornography or suspected child pornography will be admitted to the procedures -- to certain procedures regarding publication of the materials to the jury. Those are set forth on Pages 14 and 15 of the Government's memorandum. And it is ordered as follows: The parties seeking to admit or present evidence -- such evidence, evidence of child exploitative material will provide advanced warning to the Court and jurors before displaying it.

Two, and such evidence will only be shown to the jury, the Court, and the opposing parties and their counsel, and the presenting party will expressly request that the Court and/or the deputy clerk not display the exhibit to the gallery;

Three, the evidence will be displayed only for the limited time necessary to establish the relevant element or fact;

And four, under no circumstances will any such images or videos be shown to the courtroom gallery, including during jury addresses, and so that is so ordered.

I'm going to jump to Government's Motions in *Limine* 7, 8, and 9. These were also unopposed; and therefore, Government's Motion -- Motions in *Limine* 7, 8, and 9 are hereby granted.

As for 7, the Government may authenticate business records in the forensic extraction of the defendant's iPhone via certification.

As to 8, the defendant, who is representing himself *pro se*, must, of course, comply with all relevant rules and substantive law, including the *Federal Rules of Evidence*, the *Federal Rules of Criminal Procedure*, and the Crime Victims Rights Act.

And as to 9, the defendant may not present evidence or make argument about punishment, prior good acts, sympathy, allegedly unlawful law enforcement tactics, and any other substantive relevant topics. And that is so ordered.

Turning to the contested motion. Government's Motion Number 3, which is -- supports Defense's Motion Number 2 is to permit evidence of the defendant's production of child sexual abuse material with other victims, that is with victims other than Jane Does 1 and 2.

I think we're talking principally about two things. One is because Count 1 only names Jane Doe 1, whether the Government can present evidence of production with respect to Jane Doe 2. That's one area.

The second area is there, apparently, are three unnamed telegrams -- girls. The defendant's opposition memo at Page 7 provides some details. I am inclined to grant the motion in both respects. First under *414(a)*, propensity evidence is admissibility. The Court may admit evidence that the defendant committed any other child molestation. There's also a good *404* argument for letting in the evidence to prove other things, other than propensity. I mean, of course, *403* is still required.

I haven't actually seen the full messages. I have some excerpts on Page 6 and 7 of the defense -- the defendant's memo, and then the Government provide -- provides some discussion. But if the Government's description is accurate, these things show same tactics. They show the same word-for-word instructions. The defendant asks for their age. And I think the probative value is -- is high, the danger of unfair prejudice is low. It seems to me that these things are admissible as propensity evidence, and even if not as propensity evidence, they go to knowledge, intent, *modus operandi*. That's what I'm inclined to do.

Mr. John, if you want to add anything to your papers, I'd be happy to hear you. Or if you want to let counsel argue, that would be okay with me, too.

MS. HARRIS-CALVIN: Thank you, Your Honor.

THE COURT: Yes.

MS. HARRIS-CALVIN: So here we are saying that propensity evidence and *404(b)* evidence is actually not relevant at all, because the only issue that is being disputed here is that whether or not the Government can prove that Jane Doe 1 actually sent to Mr. John the images that he requested. We're not disputing that he requested images. We're not disputing that she made images per his request. We're not disputing that he -- she actually sent him some sexually explicit images --

THE COURT: Are you disputing that he enticed her to present these things?

MS. HARRIS-CALVIN: We are not disputing that either.

So this is -- our defense is similar to what we brought -- to what we cited in *Broxmeyer*, and I can find the citation briefly. But here not only does the Government have to prove that he enticed her to produce images, they have to show that she actually sent him the images that she produced at his behest. And so all of the issues that the Court decided and the Government cited that for -- that

our purposes that are appropriate for both *414* and *404(b)* are not present here because the rule says they have to be relevant to a suited issue.

THE COURT: Right.

MS. HARRIS-CALVIN: It's not --

THE COURT: Well, it seems to me -- well, one question I have is unless he admits to the jury that he did this enticing, the Government still has to prove it. And so it would seem to me that it would still be relevant.

MS. HARRIS-CALVIN: So we -- and actually the Government will prove that he enticed her -- there is clear evidence in this discussion on WhatsApp -- not WhatsApp, on the arresting platform, and sure Jane Doe 1 will speak to it. We will in our cross-examination, we might -- we won't open the door, I guess is what the Court is saying, to any argument that they have not proven that particular element.

THE COURT: I think -- well, first of all, I think this is -- also overlaps with the next motion *in limine*.

But the argument is simply that she produced this for someone else and was essentially just taking something off the shelf and sending it to Mr. John?

MS. HARRIS-CALVIN: That's correct.

THE COURT: That's the argument.

All right. Let me hear from the Government on why it needs to present this other evidence.

MS. THEODORA: Yes, Your Honor.

First of all, there's really honestly no good-faith basis for the defendant to argue that she didn't produce these images for him. They were all created within ten minutes of her sending them. So -- and she will testify, as counsel alluded to, that she created them for him, and that when we play them for the jury they will show that they reflect his very specific instructions to her and admonitions to her that she produce it in a specific way. So the probative value of this evidence is very, very low.

THE COURT: Okay.

MS. THEODORA: And I know this is -- I'm kind of getting --

THE COURT: Probative value is low?

MS. THEODORA: I'm kind of getting to -- sorry. But --

THE COURT: You may not.

MS. THEODORA: And I'm getting to the other *motion in limine* because Your Honor said they overlap with each other.

THE COURT: Yes.

MS. THEODORA: But our probative -- the evidence of this is very high, because the -- and the cross-examination that counsel wants to do is -- has a marginal probative value, is what I'm trying to say.

But this -- as Your Honor also stated, we have to prove all of the elements of this crime, and the defendant cannot stipulate away certain elements to prevent the Government from admitting relevant evidence. So -- and on that note, just -- and we can get to this in a little bit -- but the defendant says now that he is not contesting any of these things. Yet, his arguments have been all over the place and, quite frankly, we're not even sure if he's going to be *pro se* at this point, which counsel has not gotten to. So I, quite frankly, don't think we can take that as truth, that -- that that's actually what's going to happen at this trial.

THE COURT: Okay. I'm going to grant Government's Motion Number 3. I will permit evidence of the defendant's production of child sexual abuse material with other victims. I will deny the defendant's corresponding Motion *in Limine* Number 2 without prejudice to renewing the -- the defendant renewing the motion.

If -- when I see the actual messages and if for some reason they're not what I think they are, then I might reconsider. But it seems to me the Government has to prove these things, you know; and -- and therefore, notwithstanding what I'm hearing, I think the Government should be allowed to present this evidence, which I think is highly relevant and I think the probative value

substantially outweighs the danger of unfair prejudice.

Turning to Government's Motion *in Limine* Number 4, which we kind of touched upon this. This is the same as the defendant's Motion *in Limine* Number 1. And the Government moves to preclude evidence, the victim's sexual acts, et cetera, with anyone other than the defendant. The defendant wants to allow this evidence -- or some of it.

*Federal Rule of Evidence 412* is clear that evidence that a victim engaged in other sexual behavior or evidence to prove a sexual disposition is generally not admissible. There are some limited exceptions. Whether or not those exceptions apply, of course, there will be *403* balancing. And as I suggested and defense counsel confirmed a moment ago, the argument is that someone else, S.D., produced this material. You know, I'm inclined to grant the Government's motion to preclude the evidence and to deny the defendant's evidence. That's my inclination.

I'm happy to hear whether there -- what the evidence is, that she created the pornography for someone other than the defendant. As I understand it, the videos in question depict acts that he specifically asked for and she responded by saying, I made this for you. That's 1.

And Number 2, even assuming she did this -- well, the recruitment of others and the other issue, whether she recruited others to make child pornography for the

defendant, it would not be relevant as a matter of law, even if she did that for others. It doesn't mean she didn't do it for Mr. John. And again, she's 13 years old.

But I'll hear from counsel.

MS. HARRIS-CALVIN: Thank you, Your Honor.

With respect to the conversations that she had with S.D. --

THE COURT: What is the evidence that as to the porn that we are talking about, I -- the material that we are talking about. I guess I shouldn't call it porn yet -- the material that we are talking about, is there any evidence that it was made for S.D. and not for Mr. John?

MS. HARRIS-CALVIN: Yes. The evidence that was presented in the conversation thread, which is documented with S.D. in which he asked for the same kind of content, Give me a back shot of your backside here. Other content that is similar to what Mr. John was asking for. Neither one of the conversation, whether between Mr. John or S.D., is particularly abnormal. How they shot from the back or from your behind or breast shots or masturbation shots. That is just --

THE COURT: I don't know if I could think it's not particularly abnormal. But in any event --

MS. HARRIS-CALVIN: It's the definition of porn, I guess.

THE COURT: I guess in this arena maybe it's not abnormal.

What was the timing of the conversation with S.D. and the timing of the conversations with Mr. John?

MS. HARRIS CALVIN: I believe they were around the same time, March/April Indictment timeline.

THE COURT: Oh, okay.

MS. HARRIS CALVIN: I can double-check.

THE COURT: Does the Government --

MS. HARRIS-CALVIN: Again, I could look it up.

THE COURT: Okay.

Does the Government know the timeline?

MS. THEODORA: Your Honor, the mere fact that we're sitting here wondering what evidence they're going to be presenting on this --

THE COURT: I asked a question -- I asked a question. What is the timing, first?

MS. THEODORA: I believe -- I would have go back and look, because this is honestly the first I'm hearing of what the evidence is going to be, but I believe it was around the same time, March or April. They produced the entire conversation --

THE COURT: Let defense counsel finish, and then I'll give you a chance.

MS. HARRIS-CALVIN: Okay.

And so the only defense that we can present here in this case, the only viable defense is the one that we have presented to the Court, and the Court relayed back. And so if he is going to be able to present a defense, which is his right, we have to be able to challenge the Government's assertion that the photos that she actually sent are photos that she had produced just for him, and they are not off the shelf, because the evidence with S.D. that she produced -- or claimed to have produced just for him, very similar -- it was a very similar request for Mr. John.

And there's also evidence in the text threads from Jane Doe 2 that she said, she is exchanging this type of content with a few sugar daddies. And so we need to be able to show there is some evidence that she is producing very similar images that Mr. John is requesting for other people so that we can argue that the Government hasn't shown that what she actually sent to him is something that was actually produced for him and not something that she had previously produced that fit his requests.

THE COURT: Okay. Well, first of all, let me say this: The fact that she may have produced material for other sugar daddies is not relevant and is inadmissible. The only possibility here is that the items that were sent to Mr. John were actually already made, and she didn't make them for Mr. John.

Let me hear from the Government on this possibility.

MS. THEODORA: Yes, Your Honor. There's a few things.

So on that, there's basically no evidence that this -- these videos were created for this person named S.D. They were generally having a conversation around the same time, and that's it. The requests as we repeatedly said that the defendant made were extremely specific and Jane Doe 1, as we have shown in the videos, followed the defendant's very specific requests for her, Use a marker. Use some- -- be writing something. No, I said -- I said do it -- do it like this, not like that.

The messages that --

THE COURT: What is the timing on the response? In other words, he says to do this, what -- did the video come immediately --

MS. THEODORA: Yes.

THE COURT: -- did it come three days later; does it --

MS. THEODORA: The video comes within a matter of, I would say, maximum 30 minutes. I want to say it's within minutes.

THE COURT: Okay.

MS. THEODORA: Both the metadata from her video,

that we sealed them, show that she created it within five minutes of then sending it to the defendant. So he -- he makes -- yeah. So it -- it's really -- the probative value of this is extremely low.

And I would also note that we have charged the defendant with attempt. So the fact that he -- his argument that he did not receive the exact images that she produced at his request really doesn't matter, because it's very clear from the messages that he is attempting to produce child pornography with Jane Doe 1.

I know -- I think this is very clear, but the prejudice to Jane Doe 1 of this evidence is extremely high. She would have to relive publically another man's sexually abuse of her, potentially like by being cross-examined by another one of her abusers.

And I would also note, that this is the first I'm hearing specific details of this evidence. They have not complied with *Rule 412(c)*, which requires them to specifically describe, prior to two weeks before trial, what this evidence is supposed to be with notice to Jane Doe and an *in-camera* inspection by the Court.

So --

THE COURT: All right.

MS. THEODORA: -- there's no reason to admit this.

THE COURT: All right. The Government's

Motion Number 4, Motion *in Limine* Number 4 is granted. The defense's *in Limine* Motion Number 1 is denied pursuant to *Rule 412*, also *403*.

All right. Given the sequence as I'm hearing it, I'm just -- I just don't see a reasonable basis for arguing that this material was made for anyone other than Mr. John.

MR. JOHN: Your Honor, may I object to that last part?

THE COURT: I'm sorry?

MR. JOHN: May I object to that?

THE COURT: When I'm finished talking, you can say something. I was explaining my reasoning.

I don't think there is a reasonable basis for arguing that the material was produced for anyone other than Mr. John.

Now, again, I haven't seen the material yet. I won't be able to see it except in controlled circumstances, and so if -- and also, you know, I hear the notice argument being made by the Government, which is a fair argument. But if at some point the defendant can make a showing, then I might reconsider. A showing that, in fact, there is real evidence that this was made for someone other than Mr. John, I might reconsider. But based on what I'm hearing, I don't see this.

Mr. John, do you want to say something?

MS. HARRIS-CALVIN: Your Honor, I think what might be helpful to the Court is kind of looking into our presentation. We can submit you a copy of -- it's just a text spread with S.D., so you can look with your own eyes, see a conversation, see what he's asking for, see what she's giving. And then I think that will be more helpful for you to understand --

THE COURT: Well --

MS. HARRIS-CALVIN: -- what we're getting at.

THE COURT: Well, we're arguing the motions *in limine* right now. And so that should have been presented to me before.

What I'm saying is, I have ruled. If at some point the defense wants to make a showing, and if we can find the time and I can look at the stuff, maybe Monday, maybe Monday at the end of the day, or maybe Monday at the lunch hour, depending on what happens with the jury selection, you can ask me to reconsider.

But for now, the Government's Motion Number 4 is granted. The Defense's Motion Number 1 is denied.

The Government's Motion Number 5, if the defendant testifies, to allow evidence as impeachment of the conviction in Sweden for, I gather, it was attempted unlawful detention and not kidnapping. *Rule of Evidence 609(b),* If a conviction is more than ten years old, that is

from the conviction or the release, whichever is later, it can come in, but only if the probative value substantially outweighs the prejudicial effect. But there are a number of factors to consider.

I am inclined not to allow the evidence for these reasons, and then the Government can try to convince me of otherwise. It doesn't sound to me like this crime bears on truthfulness. Really it's propensity evidence, and apparently it wasn't identified as *404(b)* evidence or propensity evidence. I think there is the danger of prejudice, unfair prejudice is great.

The Government argues on the one hand that there is high impeachment value because the conduct is similar. On the other hand it argues that because the conduct is dissimilar, there is a lower risk of prejudice. There's no evidence that -- well, it's different from the charge at issue -- charges at issue, and the key here also is the digital evidence.

I'm inclined not to allow it if the defendant testifies, but I'll hear from the Government.

MS. THEODORA: Yes, Your Honor.

We understand the Court's ruling, and I think -- we understand it, and we would request that if the defendant opens the door to this type of evidence, we would be allowed to impeach him with it. For instance, if he implies he had

no violent intent or this was only on-line conduct, et cetera. But we understand the Court's ruling.

THE COURT: No, that's fine.

The Government's Motion Number 5 is denied, subject to the defendant opening the door. If he testifies, I will not allow the Government to present evidence of the conviction in Sweden. Of, course, if he opens the door, or if the Government believes that he opens the door, the Government should give notice that it wishes to get into the conviction, and then I can hear from both sides and decide whether the door has, indeed, been opened.

MS. THEODORA: Understood, Your Honor.

THE COURT: Okay.

All right. The Government's Motion Number 6 is to admit the defendant's admissions and to preclude his self-serving statements, except as necessary to comply with the Rule of Completeness. This is a standard motion. The motion is granted.

The one wrinkle in this case is what about his statements -- well, there's in problem -- no issue with his statement and interview with the agents. The concern is what about his statements with the other victims. This is covered by my ruling on Government's *Motion in Limine* Number 3.

So I think with respect to the defendant's motions

*in limine*, 1 and 2 are already addressed.

Defense's Motion *in Limine* Number 3 is to preclude evidence of the impact on Jane Doe Number 1. In reading the Government's response, I don't think the Government wants to offer evidence of the emotional or psychological damage or harm to her, which I think probably would be off limits as to her state of mind while he was purportedly enticing her. It seems to me that would be relevant. So that's where I'm at.

Any disagreement with that?

MS. HARRIS-CALVIN: We have no disagreement as long as the discussion ends with the end of the communications, not about what happened, her state of mind after, you know, this communication relationship got found out.

MS. THEODORA: Your Honor, I think we can agree to that, unless he opens the door.

THE COURT: Okay. So ordered, subject to opening the door.

Defense Motion *in Limine* Number 4, was to preclude introduction of unnecessary and duplicative images and emails. Of course, I would always say, I'm not going to allow unnecessary and duplicative evidence. But in any event, I think this is covered by the Government's Motion Number 2 regarding the way we're going to put in purported

child abuse materials.

Yes?

MS. HARRIS-CALVIN: I'm sorry. There was one wrinkle to that that we may need --

THE COURT: Okay.

MS. HARRIS-CALVIN: Which is about the specific video of her actually masturbating. We had asked that that video itself not be shown, and instead -- you know, we are obviously, not disputing that she has a video masturbating.

THE COURT: I'll hear from the Government.

MS. THEODORA: Your Honor, especially in light of this new defense that we're hearing, that this was not created for the defendant when he gave her specific and repeated instructions, That's not how to do it; Do it like there.

We're going to ask --

THE COURT: He gave her instructions to masturbate?

MS. THEODORA: He gave her instructions POV writing. She sent him a video of what she interpreted that to be. He then admonished her to do something different, and we're going to -- if he's going to argue that she created these videos for somebody else, we are going to have to play the entire video.

THE COURT: The video -- to the extent there's an

objection to the Government playing that video, the objection is overruled. I think the probative value is high, and in light of everything, the -- it -- the probative value substantially outweighs the danger of unfair prejudice.

Next we have the Government's *Giglio* letter. Let me find it --

MS. THEODORA: Your Honor, just one update on that --

THE COURT: Yes.

MS. THEODORA: -- if you'll allow me while you're finding it?

We had disclosed that the search warrant photograph of the defendant's house were inadvertently not preserved. Those photographs were found this weekend, an unofficial copy of them was found on a shared drive that -- that one of the agents found. So we believe that issue is mooted.

THE COURT: Okay. Well, I was going to ask whether -- I don't think we got a response from Mr. John on the items mentioned in the Government's letter, dated April 20, 2026.

Did the defense wish to oppose this application in part?

MS. HARRIS-CALVIN: Yes, Your Honor.

We don't have any trouble -- issues with the *Giglio* that is noted in the Government's letter. I think after looking through some of the 3500 that we received and exhibits that we are still sorting through, because they're kind of rolling in over the last few days, we do have additional, I think, *Brady* and *Giglio* demands that I think we're going to make in writing, I think depending on the Government's response, we might come back to the Court.

THE COURT: Well, that's fine.

But to the extent that there are matters raised in the letter I have identify, included for example cross-examining Jane Doe 1 and her mother on reimbursement for expenses, you're not going to get into any of these things?

MS. HARRIS-CALVIN: No, Your Honor.

THE COURT: Okay. So that's fine.

The Government's application to preclude cross into these matters is granted. If the defense wishes to raise additional matters based on what's been presented in *the 3500* material or otherwise, you will let me know.

Okay. I think -- let me just raise a couple of other things quickly: I was working on the *voir dire* yesterday, and there was a footnote about what to do with Jane Doe 1, Jane Doe 2, their parents? It doesn't do me any good to say to the jury, Do you know Jane Doe 1?

What, the Government is going to present photographs? What was -- I didn't quite follow that.

MS. THEODORA: Yes, Your Honor. We can prepare photographs of Jane Doe 1, Jane Doe 2, and the three other uncharged victims that we intend to introduce evidence of, and then --

THE COURT: What, just show them to the jury and ask them if they recognize them? Is that how --

MS. THEODORA: I think --

THE COURT: -- that would work?

MS. THEODORA: -- that that is how we would propose.

THE COURT: Any objection to that?

MS. HARRIS-CALVIN: No, Your Honor.

THE COURT: Okay. That's the way we'll do it, then.

Now, there was some other questions that are raised by -- well, there was an email regarding headphones for the recording. Any objection to headphones for the -- for folks to be able to hear what is on the recording?

MS. HARRIS-CALVIN: No, Your Honor.

THE COURT: Okay. So that's fine.

And I hear that there may be defense counsel, because I have other issues. But if -- if Mr. John is going to waive his right to go *pro se* and to have counsel, then my

other issues will go away?

MS. HARRIS-CALVIN: May I have two minutes with Mr. John, Your Honor -- less than two minutes, just 60 seconds?

THE COURT: Do you want to take a recess or --

MS. HARRIS-CALVIN: I do have another matter. Could we take like maybe just a quick break?

THE COURT: Yeah. I do have a meeting -- a Zoom at 11:00, but obviously -- well, let me just see if there's anything else.

My clerks gave notice that I have to leave on Wednesday. So Monday, Tuesday, we'll do 9:30 to 4:30. Wednesday we'll do 9:30 to 1:00 and end for the day.

Now, how much time do we think we need to complete this trial? I've got Thursday. I've got Friday.

MS. THEODORA: I don't think it should go longer than Friday. We're hoping to keep it to three days.

THE COURT: If there's a chance we'll be done with the evidence by Wednesday and sum up and charge on Thursday, that would be ideal.

MS. THEODORA: Yes.

THE COURT: Yes, on defense side?

MS. HARRIS-CALVIN: Oh --

THE COURT: What do you think?

MS. HARRIS-CALVIN: -- I -- yes, I think so.

THE COURT: I mean, it would be great if we could complete the evidence by Wednesday. You would have Wednesday afternoon to prepare your summations. And then we could have closings and the charge on Thursday, and -- and have the rest of Thursday and Friday.

And I expect to be able to get you a draft charge probably Monday. And so we would find time for a charge conference Tuesday or -- or some time Wednesday. You should know about the charge before you do your summations.

So let's take a short break, and counsel -- let me just ask, Mr. John: If he has any questions for me?

MR. JOHN: No, Your Honor.

THE COURT: Okay. I don't want to influence you. You can tell how complicated this is, the evidence, what comes in, the rules of evidence, and so these are all things to think about.

We'll take a short recess. Thank you.

MS. HARRIS-CALVIN: Thank you, Your Honor.

(Recess taken.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please be seated.

Okay. Ms. Harris-Calvin, where are we?

MS. HARRIS-CALVIN: Your Honor, Mr. John would ask the Court if you would allow him to do hybrid representation. I think there's complications with respect

to crossing the claimant in this case. I don't think any of us want Mr. John and the claimant to be interacting, for one. And I think one of the claimant's mothers as well is wanting to testify, so he would like me to cross her.

THE COURT: The mother and Jane Doe --

MS. HARRIS-CALVIN: Jane Doe 1.

THE COURT: -- Kaliah.

MS. HARRIS-CALVIN: Yes, Kaliah.

THE COURT: Jane Doe 2's mother and Kaliah?

MS. HARRIS-CALVIN: Yes. And also to close.

THE COURT: What's the Government's view?

MS. THEODORA: We don't take a position, Your Honor.

We do have several things that we would like to just make a record of. I don't know if you would like us to do that now, or after we discuss the --

THE COURT: Well, let's finish this. I think I have no problem with cross-examining -- letting counsel cross-examine Kaliah and Jane Doe 2's mother, because I don't think we would want Mr. John cross-examining them. And I guess there are other alternatives, but it seems to me letting counsel do that would make sense.

MS. THEODORA: Yes, Your Honor. And I should have clarified. We would --

THE COURT: Yes.

MS. THEODORA: -- agree with that.

THE COURT: I'm not sure about summing up. It seems to me it would be having it both ways, and I'm concerned about let's counsel sum up.

But what's the Government's view?

MS. THEODORA: Can we have a moment to confer, Your Honor?

THE COURT: Yes.

(Pause in proceedings.)

THE COURT: I think my answer is, I'm not inclined to allow it, but let's see how the trial goes. And then we can make a decision after we see how it goes with Mr. John being *pro se*. That's what I would propose.

Is the Government okay with that?

MS. THEODORA: Yes, we are, Your Honor.

THE COURT: Okay. So the answer right now is, no. I do have some concerns. But let's see how the trial goes. It may be that I prefer that to having Mr. John present the closing, and maybe the Government will change its view, as well. And so in the meantime, we will proceed with Mr. John representing himself. Counsel will be standby counsel. Counsel may cross-examine Kaliah and the mother of Jane Doe 2.

And, Mr. John, you are reminded that when you are cross-examining the Government's other witnesses, when you

are making an opening statement, you are acting as if you are a lawyer. You are not testifying. You may not testify in your opening statement, for example. If you want to testify, which is your right, you have got to do that on your case subject to cross-examination by the Government.

We can also at that point talk about if the defendant wishes to testify, how that will be done, whether questions will be put to him or not. But we can cross that bridge when we get there.

Otherwise --

MS. HARRIS-CALVIN: Well --

THE COURT: -- we'll start Monday. Let's gather at 9 o'clock, see if there are any other outstanding issues. We'll try to get a jury pool up here at 9:30 and then proceed.

Any there any other matters here today?

MS. HARRIS-CALVIN: Yes, Your Honor.

We just have some logistical matters with respect to Mr. John moving about the courtroom. I know that there are --

THE COURT: Yeah.

MS. HARRIS-CALVIN: So he's currently being shackled, and if he's going to do opening statement before the jury, we're going to do sidebars, and then having the marshals kind of hovering, I think it makes Mr. John look

like a scary guy --

THE COURT: Well, the other question I had, too, was I usually do follow-up *voir dire* with individual jurors who raise issues, we usually do it in the jury room. In most cases, the defendants waive their appearance, then I just do it in there with lawyers. So that -- that is another issue. I think we had a case once where we used a second courtroom where the defendants wanted to be present.

But have you had a discussion about these things?

MS. HARRIS-CALVIN: With the Government?

THE COURT: With the Government and the Marshal's Service?

MS. HARRIS-CALVIN: No. I was just curious what the Court has done in -- our office has not had a criminal *pro se*.

THE COURT: Well, I don't believe I have ever had a criminal *pro se* case. I have had civil *pro se* cases. The closest I can come is the issue I raised about a defendant wanting to be present for individual follow up, and so I -- I don't have a preference. I have never done it.

If -- why don't we do this: I think the parties and counsel should consult with each other on these things, the mechanics of how we're going to do that. The Government can -- well, both counsel can speak with the Marshal's Service, see what the concerns are, and see if

there is a way to do this so that we can mitigate any prejudice while maintaining the necessary security arrangements.

I'm flexible, since I have never done it before.

MS. HARRIS-CALVIN: And just one other -- I think --

THE COURT: And also, you know, Mr. John may want to think about this in the next couple of days whether if -- in light of all these things: -- I mean, for example, Mr. John, it may be that if you want to give an opening statement, the marshals are going to have to walk right behind you. You know, I'll see what happens, and what the parties propose. But we have to be concerned about these thanks, and it does project a -- you know, a certain image. There are just all these practical considerations. So it's not too late to change your mind. So discuss it.

I'm actually gone out of town tomorrow. But I'll be in touch with email if there are things that come up. Otherwise, we'll see you Monday at 9:00.

Some of these things we need to iron out beforehand, I think.

MS. HARRIS-CALVIN: Well, one of the issues that I wanted to iron out. I know that the Court ruled for the Government and we consented to the authentication of certain records, and that's fine. But we're still shifting

through the Government's exhibits that they've proposed. And so I think for most of them, we would not dispute the authenticity, but the admissibility issues we might want to raise with the Court?

THE COURT: If there's an issue, first raise it with the Government. If you can't agree, then -- then that's the kind of thing you would want to raise at 9 o'clock on Monday.

MS. HARRIS-CALVIN: Okay. So just --

THE COURT: Now, just -- I don't know if I said it before. I don't allow speaking objections. I don't usually take sidebars. If -- you know, hopefully we've dealt with the hard evidentiary questions. But otherwise, bring them up before 9:30 before the jury get her. Bring it up at the break. Bring it up at lunchtime.

How much time do we want for our openings? I usually set time limits. I don't know that I need to here. But how much time for openings?

MS. THEODORA: Ten minutes is fine for the Government.

THE COURT: Yeah. I think that this is like a ten-minute-opening case. That would be fine.

No speaking objections, if I didn't say that already. Just say one word or give me a rule.

Anything else?

MS. THEODORA: There is just one tiny additional housekeeping thing.

THE COURT: Yes.

MS. THEODORA: We spoke to Your Honor's clerks. They said Your Honor's preference is to have hard copies of the exhibits. We produced --

THE COURT: Not all of them, I guess?

MS. THEODORA: Yeah.

THE COURT: Yeah.

MS. THEODORA: So we produced, with the intent to produce business records, most of which are Excels. If we print them out, you need a magnifying glass to --

THE COURT: Okay. I don't know need it then.

MS. THEODORA: Okay.

THE COURT: If they're not legible, they won't do me any good.

MS. THEODORA: Okay.

THE COURT: That's fine.

MS. THEODORA: So no --

THE COURT: We'll work with -- as long as we get the computer up and running, and that hasn't been a problem before. It will be fine.

MS. THEODORA: Okay.

THE COURT: I don't need the hard copies.

MS. THEODORA: Okay.

THE COURT: What happens with law clerks and the materials, the -- the child sexual abuse materials? Do law clerks get to watch? I don't know if they want to see it, but what happens usually?

MS. THEODORA: Yes. So our proposal with that is, we have -- most of our exhibits have sealed versions and redacted versions.

THE COURT: Right.

MS. THEODORA: The sealed versions we plan to submit to the Court, those will have any child sexual abuse material still redacted, but it will not have the victims' identifying information redacted.

For the child pornography our proposal is to show it to the Court, including any clerks, which I think hopefully, they can --

THE COURT: They're be sitting right there.

MS. THEODORA: Yeah.

THE COURT: That's fine.

MS. THEODORA: The jury and counsel.

THE COURT: That's fine.

I did have a child pornography case many years ago, and the material is difficult and -- but the jury has to see it, so... It will be a challenging trial.

Okay. Work hard this weekend. See you, Monday.

THE COURTROOM DEPUTY: Oh, can I have an exhibit

list?

MS. THEODORA: Yeah.

THE COURT: Do we have -- oh, what's the story on the exhibit list? Do you have that, and are you able to agree on some of it?

MS. THEODORA: We can discuss whichever ones we're able to agree on, and we can provide an exhibit list shortly after the conference with Your Honor.

THE COURT: Okay. Thank you.

(*Sotto voce* discussion.)

THE COURT: Oh, yeah, we -- and so -- and I'm sorry. One more thing.

In discussion earlier, the Government referred to attempt?

MS. THEODORA: Yes.

THE COURT: Now, it's in the Indictment, but we didn't see a request for charge on attempt.

MS. THEODORA: Yes, Your Honor. We will provide the language --

THE COURT: You'll proceed --

MS. THEODORA: -- for that. We didn't know that this was going to be the defense opening.

THE COURT: Okay.

MS. THEODORA: Yeah.

THE COURT: And you'll send something.

MS. THEODORA: Yes, Your Honor.

THE COURT: All right.

And if defense counsel wants to supplement, defense counsel can supplement.

MS. THEODORA: Thank you.

THE COURT: All right.

MS. HARRIS-CALVIN: Thank you, Your Honor.

THE COURT: Okay. Thank you.

(Matter adjourned to Monday, May 3, 2026 at 9:00 a.m.)

--oo0oo--

*I (we) certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/ David R. Roy* — *29th Day of April, 2026*

*DAVID R. ROY* — *Date*