UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 24-CR-492(DC)

-against- : United States Courthouse
Brooklyn, New York

DEWITT JOHN, :
May 6, 2026
Defendant. : 9:15 a.m. o'clock a.m.

\- - - - - - - - - - - - - X

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE DENNY CHIN
UNITED STATES CIRCUIT JUDGE, By Designation, and a jury.

APPEARANCES:

For the Government: JOSEPH NOCELLA, JR.
United States Attorney
BY: BROOKE THEODORA
KAITLIN T. FARRELL
SARAH A. ELARDO
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, New York

For the Defendant: FEDERAL DEFENDERS OF NEW YORK INC.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201

BY: JULLIAN D. HARRIS-CALVIN, ESQ.
KYLA WELLS, ESQ.

Court Reporter: Charleane M. Heading
225 Cadman Plaza East
Brooklyn, New York
(718) 613-2643

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

(In open court; outside the presence of the jury.)

THE COURTROOM DEPUTY: All rise. United States District Court for the Eastern District of New York is now in session. The Honorable Denny Chin is now presiding.

Criminal cause for a trial on United States versus John, Docket Number 24-CR-492.

Can I have the appearances for the Government, please.

MS. THEODORA: Good morning, Your Honor. Brooke Theodora for the Government. I'm joined by AUSA Kaitlin Farrell, Special AUSA Sarah Elardo, Special Agent Audry Hampsch, and Paralegal Specialist Elizabeth Reed.

MS. FARRELL: Good morning.

THE COURT: Good morning.

THE COURTROOM DEPUTY: Defense?

MS. HARRIS-CALVIN: Good morning, Your Honor. Jullian Harris-Calvin and Kyla Wells of Federal Defenders of New York for Mr. John, who is present to my right. We are joined by our investigator, Jessica Hernandez, Emily Olickllano, and Jesse Knight of the Federal Defenders.

THE COURT: Good morning. Please be seated.

So first of all, we have a message from one of our jurors who said that there is a delay on his subway, and he isn't expected to get here until 9:40. So I think -- I believe everyone else is here, all the other jurors are here.

But let's go through the issues we have and we can see where we go.

We served another version of the charge last night. We made two additional changes since then. In the discussion of interstate commerce. In Count 1, as you recall, we agreed to delete the elaboration of the third manner approving interstate commerce. In the summary of the elements in the beginning, we had not deleted it, so I have deleted it from the summary of the third element that was on Page 20.

And then as the Government pointed out, we had sent four images and one video, and it should be four videos and one image. So we have made those changes.

There is at least one other issue?

MS. FARRELL: Yes, Your Honor. I'll take this one.

So the issue relates to the proposal by the defense. It's -- I'll just read the -- or would --

THE COURT: I read the email. And we had used the language, but it was slightly different. So I think actually what we have was somewhat closer to what the Government was saying. So if you look at Page 22 at Line 7, we added, "A mere request to produce visual depictions is not sufficient," et cetera. And then we changed some of the language that the defense had proposed to what is there now.

So take a look at that and see --

MS. FARRELL: Thank you, Judge.

THE COURT: -- and see if that's all right.

MS. FARRELL: Your Honor, I apologize. I didn't see this latest version. It looks like you did exactly what we're asking, so thank you.

THE COURT: All right. Well, we did that last night, actually, before we saw the email changes.

But does defendant have a problem with this language?

MS. WELLS: We do, Your Honor.

So I think issue-wise with the language "producing or transmitting." I think Element 3 is pretty clear that visual depiction must be actually transmitted. And so I think that this language actually sort of confuses the third element. So it's important that the visual depiction is actually transmitted.

THE COURT: Well --

MS. WELLS: And also, you know, it's probably worth noting that it's the third element that gives subject jurisdiction, as well. So if it's not actually transmitted, then we don't have that.

THE COURT: And this is one of these cases where we're talking about hypotheticals because the images were, in fact, transmitted.

MS. WELLS: Yeah. And I will just point to --

THE COURT: What language do you suggest?

MS. WELLS; We would be fine with, "produced and transmitted."

THE COURT: At the end it's producing, "for the purpose of producing and transmitting"?

I guess the "or" is problematic. I don't disagree with that.

MS. FARRELL: Your Honor, for Element 3 it's sufficient that the defendant knew or had reason to know it would be mailed or transported through interstate commerce. So if you look at the third --

THE COURT: Yeah, no, I -- you're right. The third element says you have to. I think your point is valid, but it was covered by the third element.

Is it not covered by the third element?

MS. WELLS: It's --

THE COURT: The third element -- the first sentence on Page 25, "The third element that the Government must prove beyond a reasonable doubt is that the visual depictions at issue were mailed or transported in or affected interstate commerce."

MS. WELLS: It does, I agree with that. But I just think the language on Page 22, I think that was added, should also reflect that with an "and" other than an "or." I think it could be confusing to the jury about that language.

THE COURT: I don't see it as a big deal. I'm going

to change the "or" to "and."

MS. FARRELL: Your Honor, may we just be heard on this?

So the third element can be proven several different ways. One of which is that the defendant knew or had reason to know it would be mailed or transported in interstate commerce. In other words, we actually don't have to exclusively prove that it was actually transported in interstate commerce. It's sufficient that he knew -- we prove that he knew or had reason to know that it would be mailed or transported, or it was produced using material that had been mailed or transported in interstate commerce, such as a phone.

THE COURT: I guess I don't see -- I don't see what difference whether it says "or" or "and." It makes -- I mean, in this context here, particularly in light of the particular facts of this case where it was both. It was transmitted in interstate commerce.

MS. FARRELL: Our -- the reason we care -- and maybe that's fine. I think our bigger concern is that the defense is going to argue that because his phone didn't contain the images that he is not guilty, when it doesn't actually matter if he received them, so long as they were -- as the girl produced them, using a phone or some other facility of interstate commerce, and that he did it knowing that it would be transported in interstate commerce. Meaning like she tried

to send them to him. That would be sufficient to convict him on a substantive account. That is not a mere attempt.

MS. WELLS: So we disagree with that, and I think *Broxmeyer* makes that clear. The Court specifically holds when discussing what it means to produce -- or induce someone to produce these images, it -- and the Court holds that the causation in the statute punishes the cause which brings about the effect, so it brings about the actually transmission -- transmittal of the image. So I think these distinctions do actually matter.

MS. FARRELL: May I address *Broxmeyer*, Your Honor?

THE COURT: Yes.

MS. FARRELL: *Broxmeyer* was a case where the Government charged the production of two images, but those two images were made by the minor prior to the defendant's solicitation of sexual images. As it turned out, she had produced other images later, but the Government hadn't charged those. And so the issue with *Broxmeyer* was temporal one, about whether or not the images that they charged were the ones that he had, in fact, requested. It wasn't an issue of whether she had sent them or tried to send them and he received them or not.

So I think on this very narrow issue that we're arguing with respect to her making video -- making the sexually explicit videos and then sending it to him, and then

whether or not he received it is different in kind from the *Broxmeyer* issue.

MS. WELLS: So --

THE COURT: What if I on Page 22 took out "or transmitting"?

MS. FARRELL: And that's fine.

THE COURT: I think we're talking about different things, but --

MS. FARRELL: That would be fine with the Government, Your Honor.

THE COURT: It's Page 21?

MS. HARRIS-CALVIN: Can I please clarify what page?

THE COURT: Yeah, I -- and I don't know if I have the exact same copy as yours -- but I was talking about on Page 22 starting at Line 7, that's where we added the mere-request language.

And then at Line 13 -- well, starting at Line 10, "The Government must prove beyond a reasonable doubt that the defendant used, employed, persuaded, induced, enticed, or coerced a minor to take part in sexually explicit conduct for the purpose of producing or transmitting the visual depictions." I mean, I think the key there is the middle of the sentence, you're -- you're inducing the minor to engage in the conduct, to take part in the conduct with his intent to produce or transmit the visual depictions.

MS. WELLS: So what Your Honor's proposing is that we just merely remove the words, "or transmitting the visual depictions," and put the period at the end of the first sentence, "producing visual depictions"? Is that what you mean?

THE COURT: Well, what I was just suggested was just delete the words, "or transmitting," which I don't think add that much in the context of the sentence.

MS. WELLS: So we don't have an objection to that, Your Honor.

THE COURT: I was trying really just to strike a compromise. Okay, we'll do that.

Now, not to belabor it, on Page 21 there is similar language on Line 13 of my copy. Should we do the same thing there, "for the purpose of producing a visual depiction"?

MS. WELLS: I'm sorry, Judge. What page are we on?

THE COURT: Page 21. I'm looking at Line 13. We just have the same language there.

MS. FARRELL: We would ask that you treat it the same.

THE COURT: Delete "or transmitting."

MS. HARRIS-CALVIN: I'm sorry. Our pages a little off. Were you looking at the red-lined version?

THE COURT: Yeah. So it's -- the heading is Second Element, and it's actually part of first sentence under Second

Element.

Is there any objection to taking out "or transmitting"?

The Government has no objection?

MS. FARRELL: No objection, Your Honor.

THE COURT: Does the defense have an objection?

MS. WELLS: One moment.

We have no objection.

THE COURT: No objection?

MS. WELLS: No objection, Your Honor.

THE COURT: Okay.

Did either side have any other issues with the charge we circulated yesterday?

MS. FARRELL: No, Your Honor.

THE COURT: Okay.

The defense, nothing else?

MS. WELLS: No. Thank you, Your Honor.

THE COURT: Now, I should put on the record, we did not include language that the jury did not have to be unanimous. We did not use that exact language as the Government had suggested. I think it was Request Number 12, that the -- the case that stands without proposition is actually a Tenth Circuit case. The Second Circuit case I've cited talks about something different. There are other cases that say that they have to be unanimous as to which visual

depiction.

I don't know if the Government picked up on that? I did not include that additional language.

MS. THEODORA: We did, Your Honor. And we don't have an objection to the way it's written.

THE COURT: Okay.

MS. THEODORA: Thank you.

THE COURT: Great.

Ms. Wells, yes?

MS. WELLS: I just wanted to say no objection.

THE COURT: I wouldn't think so.

MS. WELLS: No.

THE COURT: Okay. Let's -- did you check on the juror?

THE COURTROOM DEPUTY: I did, and they're still missing.

THE COURT: Okay. Well, look, we could -- and the others are ready to go.

THE COURTROOM DEPUTY: Uh-huh, yes.

THE COURT: Look, we could theoretically excuse that juror and go to the next alternate or just wait and hope that he gets here in 20 minutes?

MS. FARRELL: Do you know which juror number it is? Just out of curiosity, I don't think it matters, but --

THE COURT: It was the graduate student.

THE COURTROOM DEPUTY: 7.

MS. FARRELL: Oh, who had the final on Friday?

THE COURT: He's studying, perhaps.

MS. FARRELL: Yes.

THE COURT: I don't know.

THE COURTROOM DEPUTY: He's at the City Hall Station now.

THE COURT: He's at the City Hall.

THE COURTROOM DEPUTY: Yes, Your Honor.

THE COURT: All right. So let's just wait.

MS. HARRIS-CALVIN: Your Honor, I have one more issue that I was --

THE COURT: Yes.

MS. HARRIS-CALVIN: Procedural issue.

Yesterday at the end of the day, the Government just wanted to make sure that their exhibits were together and then finalize today after they finally rested their case, I think they've done that and we all have the updated sheet.

We have no objection to that.

MS. ELARDO: Your Honor, there are just three exhibits that we would just like to clarify for the record, and then we can rest. We did inform defense counsel of that, and we do have an updated exhibit list for the Court, as well.

THE COURT: All right.

MS. ELARDO: But at this time --

THE COURT: There's no additional -- no objection, right, to the updated exhibit list?

MS. HARRIS-CALVIN: Not at all, but they wanted to transmit some additional --

MS. ELARDO: Yes. We just have three exhibits that we would like to offer into evidence at this time: Government Exhibit 100, which is a certification; Government Exhibit 501B; and Government Exhibit 205S.

THE COURT: S?

MS. ELARDO: Correct, S as in "Sam."

THE COURT: Those exhibits are received without objection.

(Government's Exhibits 100, 501B, and 205S admitted.)

MS. ELARDO: And just to inform the Court, as well, I did print out an updated copy of Government Exhibit C319. We had updated an exhibit number on this certification. I informed counsel yesterday. There was no objection.

But the Court's records, I do have an updated copy of C319 to provide for the Court.

THE COURT: All right. We take it. Thank you.

MS. HARRIS-CALVIN: And, Your Honor, now that the Government has finally rested and the defense rested, we will renew our *Rule 29* motion for the reasons stated yesterday.

THE COURT: All right. The Government finally

rests, the *Rule 29* motion is renewed, and it is denied.

MS. HARRIS-CALVIN: Thank you.

THE COURT: All right.

Okay. So let's take a recess, as soon as the last juror gets here, we will have closings.

MS. HARRIS-CALVIN: 9:40; is that right?

THE COURT: Yeah. I mean, if he should get here earlier, we can start earlier.

(Recess taken.)

(Continued on the next page.)

(continuing)

THE COURTROOM DEPUTY: All rise.

THE COURT: Please be seated. The last juror has arrived.

I understand the parties want to put something on the record.

Here comes Mr. John.

All right. What was the issue?

MS. ELARDO: Your Honor, the parties discussed a stipulated jury instruction with regards to Special Agent Michael Buscemi's testimony yesterday with regards to the Miranda warnings signature by the Defendant. I did send it over to the Court, but I can read the proposed instruction aloud.

We would propose the following instruction: You heard testimony from Special Agent Michael Buscemi that the Defendant, after being read his Miranda rights from a written form, waived his Miranda rights orally and signed a Miranda waiver form. I instruct you that the Defendant only waived his Miranda rights orally.

THE COURT: The Defense agrees?

MS. WELLS: We have no objection. We agree, yes.

THE COURT: Is there no objection, or is there a stipulation? I thought it was a stipulation.

MS. WELLS: It's a stipulation, yes. We are in

agreement.

THE COURT: So would you like me to read that to the jury first thing or what?

MS. ELARDO: Yes, that's fine, Your Honor.

THE COURT: And I will say the parties have agreed on the following with respect to Agent Buscemi's testimony yesterday.

And do we have it?

MS. ELARDO: I did just e-mail it right before everybody came out.

THE COURT: Yes, that doesn't help me a lot. My clerk can forward it to me on my phone. I will read it off of my phone.

MS. ELARDO: Apologies, Your Honor.

THE COURT: No, it's all right.

I have it. I have it.

Okay. Let's bring out the jury.

And who is summing up for the Defense?

MS. HARRIS-CALVIN: I am.

MS. THEODORA: And Your Honor, are we on the record?

Just for the record, the first few slides of the Government's PowerPoint, I've conferred with the Court's deputy, they're going to be shown only to the jury, and then I will let him know when to show it to the gallery.

THE COURT: All right.

MS. THEODORA: Thank you.

THE COURTROOM DEPUTY: All rise.

(Jury enters.)

THE COURTROOM DEPUTY: Thank you. Please be seated. Thank you.

THE COURT: Good morning, ladies and gentlemen.

So we're delayed a little bit, but we're ready to go now.

Before we turn to the summations, the parties have agreed to the following with respect to Agent Michael Buscemi's testimony yesterday. Agent Buscemi testified yesterday. They've agreed as follows:

You heard testimony from Special Agent Michael Buscemi that the Defendant, after being read his Miranda rights from a written form, waived his Miranda rights orally and signed a Miranda waiver form. I instruct you that the Defendant only waived his Miranda rights orally. In other words, he did not sign the form.

With that, so the Government has the burden of proof, as I told you several times. And therefore, the Government gets two closing arguments. It has an opening closing argument, then we will hear from the Defense, and then the Government gets what we call a rebuttal summation. And although Mr. John has been appearing pro se, Ms. Calvin-Harris will present the closing argument on his behalf.

So first we will hear from the Government.

MS. THEODORA: Thank you, Your Honor.

THE COURTROOM DEPUTY: Can I have the jurors in the front row lift their monitors up?

MS. THEODORA: Good morning, members of the jury.

Before I get started, I wanted to thank you on behalf of everyone sitting at the Government's table for your time and for your careful attention over the last few days. We know this evidence has not been easy to watch or to listen to, and we are grateful for your focus and for your commitment offer the past two days.

Now, you are in a position to decide this case based on the facts you've seen at this trial.

A few days ago, my colleague, Ms. Elardo, got up here and read you these words: I'm only 13. I'm scared. You now know that these are Kaliah's words. At just 15 years old, Kaliah came here and testified before everyone in this courtroom, including the Defendant, about something that never should have happened to her as a child. She told us how the Defendant manipulated her on the internet to satisfy his own sexual desires. This was just weeks after her 13th birthday, just weeks after she posted in a Reddit forum called "am I ugly/teens", where the Defendant, an adult 31-year-old man, was lurking to find middle school aged girls just like her. The Defendant used Kaliah and her youth, her inexperience, and

her insecurities as a middle school girl to make child pornography for himself.

And once the Defendant got what he wanted from Kaliah, he moved on to her best friend, Jane Doe, the child shown here with her Easter basket. And he solicited more child pornography from this girl. Jane Doe was only 13 years old.

Members of the jury, you've now seen the messages, the images, and the online records of what the Defendant did to these children. You saw exhibit after exhibit, message after message, showing the digital record of how the Defendant groomed these young girls to solicit and produce a very specific type of child pornography. POV videos of them riding something, makeshift dildos, markers. The exhibits that we showed you at this trial were essentially transcripts of how the Defendant committed these crimes.

You have seen how he spent his time, hiding behind a screen, manipulating children. And you've also seen how the very screens, the very computers that this Defendant hid behind became a digital record of everything that he did. You now have the electronic receipts of this Defendant's crimes. And now it's time to hold him accountable for what he did to Kaliah and to Jane Doe.

So this morning I want to do two things with you all. First, I'm going to walk through the elements of the two

charged crimes in this case. The elements are just a list of things that the Government has to prove beyond a reasonable doubt, each one, for the charged crime or count.

After our presentations today, Judge Chin will instruct you on the law, and it's what he says about the law that controls. I will give you a preview today of what I expect he will tell you.

And the second thing I want to do today is I want to walk you through the evidence that we have admitted at this trial, and I want to explain to you how this evidence proves each of these elements beyond a reasonable doubt.

So just a note, on this PowerPoint, you will see that there are exhibit numbers and trial transcripts that will be sometimes referenced within it. Examples are on the screen with the red circles. You won't have this PowerPoint when you deliberate, so you may want to write these down, if at any point you want to view them later.

To begin, I expect that Judge Chin will refer to five visual depictions when he instructs you on the law for this case. Visual depictions is a word that he will use. These are just the four videos of Kaliah that we watched in here on Monday and the one image of Jane Doe that we looked at yesterday after her mother Natasha's testimony. You likely remember the four videos that we watched of Kaliah at the beginning of this trial. They were incredibly hard to watch.

We had to show them to you and I show you redacted screenshots of them here so that you could be the judge of what the Defendant actually did.

This first video has the file name IMG_5473. This is the first video we played on Monday, after Kaliah left the courtroom. I'm not going to get into the exact specific details. If you want to view these videos again during your deliberations, you may request them, and you can view them. This one, this first one showed her undressing until she was nude and playing with her genitals and turning around.

The second video, it has a long file name. It starts with unified message and it ends in 099. This is the second video that we played of Kaliah. It shows her grinding on the pillow, wearing nothing except a t-shirt and her face is not -- generally not -- you're not able to generally see her face, although as we know, she testified that this was her.

And then these are the last two videos, the most graphic videos that we saw. IMG_5722, that's the third video. And IMG_5724, that's the fourth.

The third video shows Kaliah with a green vibrator inserting it and grinding her pubic area.

The fourth video shows her masturbating, front-face, POV view.

This last visual depiction is the screenshot of Jane

Doe that Jane Doe sent to the Defendant on Instagram. It has -- it's a screenshot, it's a picture. It has the file name unified message and it ends in 033. This is the picture where Jane Doe is completely nude and displaying her front genitals and breasts in the mirror.

And if you need it, this is Government Exhibit 701. It's a summary of these videos in chart form. It has their file names, which is the third column here, the file names I just read. And it has the metadata on my right, date created/sent.

You may have noticed throughout the trial that some of the records were in different time zones. This summary exhibit has them all standardized to central time, which was Kaliah's time zone in Texas. The time zone differences were just because they're from different sources. Instagram produced them in what's known as coordinated universal time. The images from Kaliah's phone are in her time zone, that's Texas central daylight time, which is five hours behind coordinated universal time or UTC.

This chart, under the recipient column on my left also shows what online account the Defendant used to view and access these visual depictions. So you will see there, shane-matt@hotmail.com is listed for the iMessage. That was the Defendant's Apple ID. We'll talk about this again later. He was using emij.1996, which was linked to that main Apple ID

shane-matt@hotmail.com. And then there's Spongebobdoodlepants23, which is the Instagram account that he used to view some of these videos, one of the videos and the image from Jane Doe.

We can display the PowerPoint.

So now that we understand exactly which visual depictions are at issue in this trial, I want to move on to the elements of the two crimes that are charged in this case.

The first crime, Count One, is sexual exploitation of a child. That child is Kaliah. Count One relates to Kaliah only. Sexual exploitation of a child just means that the Defendant used Kaliah to make child pornography. I expect that Judge Chin will explain to you that the Government must prove three things beyond a reasonable doubt for you to convict the Defendant of sexual exploitation of a child:

First, that Kaliah was under 18 years old;

Second, that the Defendant used, employed, persuaded, induced, enticed, or coerced Kaliah to take part in sexually explicit conduct for the purpose of producing a visual depiction of it.

Judge Chin will instruct you on this again. This is a lot of verbs on the screen here. He doesn't need to have done each of these things, used, employed, persuaded, et cetera. Just one is enough. And this basically -- again, Judge Chin will instruct you, and you should listen to him,

but his basically just means that the Defendant must have done something to cause Kaliah to take part in sexually explicit conduct for the purpose of producing a visual depiction.

Judge Chin will also instruct you on what counts as sexually explicit conduct. I expect that he will tell you that it includes things like actual or simulated sexual intercourse, masturbation, and what's known lascivious exhibition of the genitals or pubic area of a minor. That last term, lascivious exhibition, that just means that the photo or the video shows a minor's genitals or pubic area in a way that is intended to sexually excite someone. And again, the Defendant must have done all this for the purpose of producing a visual depiction of it.

The last element is the interstate commerce element. For this element, the Government must prove that the visual depiction of Kaliah was transported or affected interstate commerce in some way. One of the ways the Government can do this, and that we did do this, is simply by showing that the photo or the video was sent over the internet.

Before I move on to Count Two, there is a whole other way that you can find Defendant guilty of Count One. I expect Judge Chin will instruct you that you can find, in the alternative, that the Defendant attempted to sexually exploit Kaliah. To prove attempt, the Government needs to prove two elements beyond a reasonable doubt:

First, that the Defendant intended to commit the crime of sexual exploitation of a child, the crime I just described to you, that he intended to use Kaliah to produce child pornography;

And second, that he took a substantial step towards committing that crime.

This just means, again, that he wanted or intended to produce child pornography with Kaliah and took a meaningful step toward making that happen. For example, asking Kaliah to create a video of herself riding something. That is enough to show attempt, and it's enough to find the Defendant guilty of Count One.

The second and final count in this case charges the Defendant with access with intent to view child pornography. This just means that the Defendant used the internet to look at child pornography. This count relates to both Kaliah and Jane Doe. It has four elements:

First, the Defendant knowingly accessed a visual depiction. One of those videos and the photo I just mentioned to you.

Next, that the production of the visual depiction involved and showed a minor engaging in sexually explicit conduct.

Third, that the Defendant knew the visual depiction showed a minor engaging in sexually explicit conduct.

And lastly, that same interstate commerce element that we already talked about.

Now, let's talk about how the evidence that we've shown you at this trial and that we've admitted proves these crimes beyond a reasonable doubt. I want to begin with what's not in serious dispute here, because, frankly, most of this case isn't.

First, there can be no serious dispute, I submit to you, that this Defendant was using Spongebobdoodlepants23, shane-matt@hotmail.com via his e-mail emij.1996@gmail.com, and AJ $olistepha on Cash App to message and to pay Kaliah and Jane Doe, and to view the child pornography that they sent him. These are the accounts that we've placed on this demonstrative throughout trial. Clearly, none of these are the Defendant's real name. That's because he hid behind fake names when he communicated with his victims. I submit to you that this was by design so that he could stay hidden and continue to sexually exploit children on the internet.

So, how do we know that these are the Defendant's accounts? First, you heard the Defendant say it in his own words. This is the transcript that we provided to you as a listening aid. It's, as the Judge instructed you, it's your recollection and your interpretation of what is on the audio recording that controls. Special Agent Buscemi walked you through this. This is what the Defendant said when the FBI

interviewed him at his apartment in November 2024, that same day they executed the search warrant.

At the top, the Defendant told by nodding his head Special Agent Buscemi that it was him using Spongebobdoodlepants23 to chat with Jane Doe. And then the Defendant confirmed in response to Special Agent Hampsch's question that someone named Dewitt was using Spongebobdoodlepants23 and emij.1996 to communicate with Kaliah and Jane Doe.

The Defendant also told the FBI that they would find emij.1996@gmail.com logged into his phone when they searched it. And that's exactly what happened.

Special Agent Gale came here and told you about the Defendant's phone, the search of his apartment, the phone, the green iPhone that they took from next to his bed. This is the extraction report from the Defendant's iPhone. You can see here, emij1996@gmail.com, logged into it.

Here are some of the other things. The Defendant's phone number, same phone number on the board. Shane-matt@hotmail.com is the Apple ID for this iPhone. Spongebobdoodlepants23 is logged in to the Instagram account. And so is the cash tag $olistepha.

This is the green iPhone we're talking about. Special Agent Gale told you that they seized this iPhone from right next to the Defendant's bed.

And in addition to those accounts that I just listed to you, when the FBI searched this phone, they found dozens of iMessages between emij.1996 and Kaliah. And they also found Instagram messages with Spongebobdoodlepants and both Kaliah and Jane Doe.

Here is a copy of the messages that law enforcement extracted from Kaliah's phone compared to the messages that law enforcement extracted from the Defendant's phone. The writing here is pretty small, but these are the -- this is the POV riding instruction that we've seen so many times at this trial. Kaliah's phone on the left, Defendant's phone on the right. They are mirror images of each other.

On this next slide are the Instagram messages with Kaliah that were found on the Defendant's phone. You remember Kaliah testifying that her display name was 777.

This next slide are the messages with Jane Doe. Her name is redacted there. You all know her name now. These were also found on the Defendant's phone. Spongebobdoodlepants23.

The next way you know beyond a reasonable doubt that it was this Defendant behind the screens of these accounts is the records that Special Agent Scaramella walked you through yesterday. This is Government Exhibit 700. It's a summary of all of the business records that the FBI collected from all of these online accounts or online providers to unmask this

Defendant. Law enforcement traced these accounts step by step, using common identifiers to connect one account to the next. This is just one example of a common identifier between these accounts. SakaiJohn@hotmail.com, it's the registered e-mail address for Spongebobdoodlepants23. It's also not the Defendant's name. It's connected to his IP addresses. Microsoft Hotmail records show it's registered to him, Dewitt J, that's his phone number there. There are many different ways that the information in these records cross corroborate each other that it is this Defendant.

I'm not going to walk through every one of these records now. I encourage you, if you want to do it yourself, these are some of the exhibits that we admitted, the business records that underlie this summary exhibit. They're circled in red. Each one of them leads back to Dewitt John.

Before we move on from the business records, I do want to focus on two accounts here that I already mentioned: Shane-matt@hotmail.com, the Defendant's Apple ID, and Spongebobdoodlepants23, the Defendant's Instagram account. These are the accounts that the judge will read to you as referenced in Count Two. These are the accounts that the Defendant used to view and to access child pornography of Kaliah and of Jane Doe.

These are the messages with Kaliah that were pulled from the Defendant's phone. This is the Defendant's phone.

Shane-matt@hotmail.com. Owner: Dewitt John. Using emij.1996@gmail.com. And there's that hi message from Kaliah on March 28, 2024.

Finally, what's the last thing that proves it was this Defendant behind a computer using the accounts we just looked at? Special Agent Gale testified about this. We admitted some of the exhibits that he testified about. This is from the Defendant's phone. It's a Telegram message where the Defendant is going by Nano. That's also on the board right there. This is another minor girl who identified herself as 15 years old. Defendant sends almost the exact same script that he sent to this girl as he sent to Kaliah. POV riding. The Defendant sent that instruction to this minor girl after verifying for himself that she was fifteen.

And I read the bottom message from his phone, after she says in blue, she's fifteen, Defendant: Can I confirm this? Sorry, not trying to be annoying or anything, you just look older in some of the photos and videos than others.

Here's another minor girl who said her name was Mellbee, Telegram messages from Nano. Defendant told this girl to film a POV riding video of herself. Something that isn't a dildo: Hair brush, toothbrush, bottle, whatever. Just like what he told Kaliah, no dildos, no real dildos. The Defendant wanted Kaliah to use a marker. He wanted Mellbee to use a hair brush, a toothbrush, or a bottle. The Defendant

did this over and over again. The same script, the same words. These words are like a fingerprint that the Defendant left behind and they tell you that it was him.

What else is not in dispute? There is no serious dispute that Kaliah and Jane Doe were both 13 at the time of the Defendant's crimes. You have both of their birth certificates. Kaliah also testified that she turned 13 in January 2024. And I would submit to you that the videos of Kaliah clearly show that she looks 13.

Jane Doe's mother also came here and testified. Her name is Natasha. She said Jane Doe was 13 at the time the Defendant preyed on her online, and she identified Jane Doe in the photo that we looked at.

Can we remove this from the public gallery. I'm sorry about that.

There's also overwhelming evidence that the Defendant knew these girls were 13.

This is the Defendant, April 13th, 2024 to Jane Doe: Are you 13 as well?

And we have seen the iMessages several times from Kaliah telling the Defendant that she was 13.

If that wasn't enough, here's the Reddit post that started it all.

Sorry, you might want to take this down. I'm sorry.

This is where Kaliah posted pictures of herself

saying that she was 13 and asking others to tell her whether they thought she was ugly. The Defendant deliberately chose this forum, "am I ugly/teens" because he was looking for a girl just like Kaliah, he was looking for a 13-year-old.

There are two final things that there can be no serious dispute about. First, the videos and the image that I walked you through earlier. There can be no serious dispute that these show Kaliah and Jane Doe engaging in sexually explicit conduct. You remember these two videos. These are heavily redacted screenshots of them. These are with Kaliah, for the record. 5722 and 5724.

And this message of Jane Doe to the Defendant where she sent a video -- an image of herself completely nude, displaying her genitals, this is lascivious exhibition of the genitals to excite the viewer.

And we know the Defendant saw this video -- excuse me, this image of Jane Doe because this is what he said in response to it: That first one though. He viewed the first image of Jane Doe nude and he commented on it.

And, again, before we move to what is in dispute, there is no serious dispute that the interstate commerce element is satisfied for both of these counts. From Texas, Kaliah and Jane Doe sent these visual depictions over the internet to the Defendant who was lurking behind a computer screen right here in Brooklyn. That satisfies the interstate

commerce element.

(Continued on the next page.)

MS. THEODORA: (Continuing) So what is in dispute? Members of the jury, I submit to you basically nothing.

The last element that we have not discussed yet relates to Count One. It's that the defendant used --

THE COURT: We can put this up for everyone, right?

MS. THEODORA: Yes, Your Honor.

It's that the defendant used, employed, persuaded, induced, enticed or coerced Kaliah to take part in sexually explicit conduct for the purpose of producing a visual depiction of it.

I submit to you that we saw the defendant do each one of these things with Kaliah.

This is a timeline that we've admitted. It's a summary exhibit. It's at Government Exhibit 704. This summarizes all of the messages from the different, from Instagram and from iMessage, the videos and the payments to Kaliah. The videos are in red. I want to walk you through this timeline so that you know exactly what happened here.

The first thing that happened was the Reddit post. That's not on this chart. Kaliah told us about that. It's the AM I Ugly/Teens post where she said she was 13. The defendant identified Kaliah in that forum. He responded to her post. He offered to pay her for new photos. This happened sometime in March 2024 approximately.

March 27, 2024, this first line right here,

defendant pays Kaliah $50 on CashApp.

March 28th, time 7:43, these are also in Central Daylight Time, Kaliah says: Wanna see something? And then she sends the first video, IMG_5473.

Now, I want to be really clear about this video. The government is not arguing, as the Court instructed you at the beginning, that Kaliah, that the defendant used Kaliah to produce this first video.

This first video does not relate directly to Count One in that way. It does relate to Count Two because it's child pornography and the defendant accessed and viewed it using his Apple ID shane-matt@hotmail.com. It's also relevant to show you this chain of events.

Kaliah sends the defendant the least graphic video that we saw of her. That's the one where she's undressing and she turns around.

And just so there's no doubt that the defendant accessed and viewed and received this video, this is what he said in response to it: Beautiful all around. I love your braids.

We all saw how she was wearing her hair. So did the defendant.

Going back to the summary chart at 704, after the video, the first video in red, this is where the production starts. The defendant receives this video, he views it, and

it's not what he wanted so he gives her explicit instructions on how to actually produce the child pornography that he wanted: POV riding, front-facing camera. It does not have to be any time soon. Just when you're in the mood and enjoying yourself.

This is the defendant persuading Kaliah to send him a POV video of herself masturbating. And if that persuasion wasn't enough, right after that, he sends her a CashApp payment, $20. This is quite literally the defendant employing Kaliah to make child pornography.

Three days later, this is the second page of 704, the conversation moves to Instagram.

Defendant: How do you feel about my request?

Kaliah told us that was the POV riding request. And she sent this video, the second video here ending in 099. The instructions and the follow up on his request, this is the defendant inducing Kaliah to make child pornography.

The defendant viewed this video. This was the video of Kaliah grinding her pubic area against the pillow. That wasn't enough for the defendant. He told Kaliah, if you remember, she almost did what he wanted.

He said: When I said riding, I meant like a makeshift dildo. Something like that.

And we've seen many times now what Kaliah said in response: I'm only 13. I'm scared.

And the defendant persisted: Does not have to be anything big. Thought you were older. You never tried anything. You're only 13. It could just be a marker.

Kaliah testified about how these messages made her feel: Pressured. This is the defendant coercing Kaliah into making child pornography. He paid her, he repeatedly asked her for more, and she felt pressured to send these videos that she was scared to make.

This is the third page of 704. This is what happens next.

Kaliah, third line down, 8:22 p.m.: Okay, I'll do it right now. It's sending.

This is within two messages, two minutes of the defendant saying: If you're comfortable and trust me, would love to see your face.

Remember how that second video didn't show her face?

And he also said, If you're not okay -- he indicated: If you're not okay with a marker, just regular stuff then. Just have fun with yourself. I prefer it when you enjoy it.

The last two videos, 5722 and 5724, are what Kaliah sent him in response.

We've also admitted the metadata from -- we've admitted the metadata for all of the videos except for the Instagram video which, as Special Agent Scaramella testified,

Instagram did not provide metadata for in terms of the created date. They did provide when it was sent.

But these -- I want to focus on these last two videos, 5722 and 5724.

Created 8:23 p.m. Sent 8:28 p.m.

Created 8:27 p.m. Sent 8:30 p.m.

If you want to look at the metadata from Kaliah's phone, the extraction that law enforcement made, that's at Government Exhibit 111 and 112. I know that the text here is very small, but it confirms what I just read to you on that summary exhibit.

March 31, 2024. After receiving those last two videos, payment of $50 to Kaliah with the subject "Dewey."

Members of the jury, this is how you make child pornography. This is how the defendant used Kaliah to make child pornography.

I want to note one final thing before I wrap up.

I submit to you that based on everything I just described, there is absolutely overwhelming evidence that the defendant used Kaliah to produce child pornography for Count One, but if for some reason, you do not believe that he completed that crime, the crime of sexually exploiting Kaliah, he is still guilty of Count One because he attempted to sexually exploit a child.

Not only did the defendant take a substantial step,

the riding instructions, the other instructions I read to you, he quite frankly had no steps left to take to receive these videos from Kaliah. He paid her. He bugged her about it. He pressured her. All that was left was for her to produce and send him the videos.

Here's the CashApp screenshot from her phone. Here's the instructions again.

And I want to just talk about these messages briefly.

The other way that we know the defendant attempted to sexually exploit Kaliah is because he worked to build a false sense of trust with her so that he could exploit her to get what he wanted.

These are just a few of the many examples from her messages. The defendant told her he would take care of her. He asked her about her pets, her siblings, her sports, her interests. You remember her saying she told him about her standardized testing for third to eighth graders. He also asked her about playing outside with her nine year old sister. All of these were substantial steps. They were trying to build a false sense of security with her to entice and induce her into sending intimate videos to him.

Members of the jury, I submit to you that we have proved each of these crimes beyond a reasonable doubt.

This case will be yours soon for deliberations. As

you do that, I ask you to think about the testimony of the victims in this case: Kaliah, Jane Doe, and Natasha, Jane Doe's mother.

Natasha, who had to live through every parent's nightmare, discovering that an adult man here in Brooklyn was preying on her daughter in Texas through her daughter's phone.

And Kaliah who, at just 15 years old today, came into this courtroom and was asked to relive what the defendant did to her when she was barely 13. I ask you to think about the courage that that took to face what happened, for a ninth grader to testify about this publicly, and to face this defendant sitting right here in this courtroom.

It is time to hold this defendant accountable for the harm that he inflicted on these children. You have all the evidence. You have the electronic receipts. I've walked you through it. No more manipulation. No more children to exploit. No more hiding from this defendant. Here, in this courtroom, the defendant also must now face what he did.

And it is time for you to reach the only verdict that is consistent with the evidence and with the law in this case: Guilty on both counts.

Thank you.

THE COURT: Do you want to go now or do you want a short recess?

MS. HARRIS-CALVIN: Yes. May we have a short recess

just to switch?

THE COURT: Okay.

Ladies and gentlemen, we'll take a short recess and then we will hear the summation on behalf of the defendant.

Don't talk about the case yet, not quite yet.

Thank you.

(Jury exits.)

(In open court; outside the presence of the jury.)

THE COURT: Are we ready?

MS. WELLS: May I bring up a very short issue?

THE COURT: Yes.

Please be seated.

MS. WELLS: So during the closing arguments, the government mentioned that Mr. John solicited images from Jane Doe and Kaliah and just the way it came across, I'm a bit concerned that they might think that he's charged with production with respect to Jane Doe.

I would just ask for an instruction reminding them the images with respect to Jane Doe --

THE COURT: I don't think it's necessary. I mean it's going to be very clear when I give the charge that Jane Doe is not the subject of Count One. So the request is denied.

I don't want to give anything now. It's going to bring too much attention to it, but it will be clear from the

charge.

MS. WELLS: Okay. Thank you.

THE COURT: Okay. We'll bring out the jury.

(Jury enters.)

THE CLERK: Thank you, please be seated.

THE COURT: All right. Ladies and gentlemen, Ms. Harris-Calvin will present a closing argument on behalf of Mr. John.

MS. HARRIS-CALVIN: Thank you, Your Honor.

Ladies and gentlemen, it is true that this has been a difficult trial to sit through.

It is sad that teenage girls post photos on the internet in this age of the influencer for likes and for comments. It is sad that some sell sexual photos and videos for money. And it is terrible that some adult men pay for those videos and photos.

This case is not about our discomfort with what we saw here. It is not about our disappointment with the ills of our society playing out on social media. This case is not about our visceral reaction to the images that were displayed by the government in this case. It's not about emotion. It is not about disgust. It's not about even anger.

This case and what you will have to decide today is about the law as the Judge will instruct you and the facts in this case.

Now, just to be clear at the outset, as Ms. Theodora said, much of what you saw here in the last couple of days is undisputed, undisputed.

Mr. John did communicate with Kaliah and with Jane Doe. Mr. John did send Kaliah money in exchange for photos and videos, sexual photos and videos. It is true that he received sexual videos from Kaliah and Jane Doe and that he accessed those sexual images.

With respect to Count Two here, it's undisputed. Mr. John admits that. He takes responsibility for Count Two. So why then are we here? We are here because the government has charged Count One in addition to Count Two.

Now, there are many laws that govern production, the distribution, the receipt, the possession, the access of sexually explicit depictions of minors, but with respect to Count One, the government must prove very specific things about the very specific way Mr. John allegedly committed what they have charged in Count One. And what is that?

Count One has specific elements. It requires the government to prove beyond a reasonable doubt those specific elements of Count One. They must prove beyond a reasonable doubt that Mr. John coerced or persuaded or enticed or used or employed Jane Doe -- excuse me -- Kaliah to make those images that she actually sent. And, in other words, that means that she made the images that she sent because he compelled her or

caused her to do so.

That is the single question for you to answer in your deliberations today: Has the government proven beyond a reasonable doubt that Mr. John got Kaliah specifically to do this, that his persuasion is the cause of her production of the specific images at issue.

Now, as Ms. Theodora mentioned, you must listen carefully to Judge Chin's instructions about the law. He's the judge. He will instruct you that it is not enough that Mr. John merely requested Kaliah produce the videos. And it's not enough to that Mr. John merely received the images that Kaliah sent to him. The government must prove beyond a reasonable doubt that Mr. John persuaded, in all of this evidence or one of those, persuaded Kaliah to produce what she said sent him.

Now, there are very specific images. You all saw a lot of images across the last couple of days that were difficult to look at, we admit, but with respect to Count One, there are only three images at issue: Image 5722, 5724, and another ending in 0499.

Notice that the government does not claim that Mr. John persuaded Kaliah to create a video with the number 5473. Even though she sent him that video, they're not charging him under Count One, the persuasion count. They're merely charging him with accessing it or possessing it on his

phone.

So remember how the government began the case with Ms. Elardo and how they discussed in closing a moment ago with the quote: I really don't want to. Do I have to? I don't feel comfortable with that. I'm only 13.

That sounds terrible. It sounds like Mr. John pressured Kaliah, that he overcame her will such that she gave in and made these specific three sexual images that she didn't actually want to make, but that isn't what happened.

When Kaliah asked Mr. John if she had to, when she said she really didn't want to, he said, that's okay. She didn't have to make them. And then she didn't do what he asked her to do initially. The government's own evidence does not support their claim and it certainly doesn't prove or provide proof beyond a reasonable doubt.

As to Count One, what the government's evidence proves is that Kaliah posted photos of herself on Reddit because she wanted people to comment on her looks. The evidence shows that Mr. John commented and he asked her if he could pay her for her nudes. The evidence shows that she discussed pricing with him and then she sent him things that both, one, were not what he asked for and, two, weren't videos that he caused her to make before she sent them.

Now, before we talk about how the government has not presented to you enough evidence showing Mr. John's guilt as

to Count One, we must talk about three governing legal principles that form the lens through which you must view and think about the government's evidence in this case. They are the presumption of innocence, the burden of proof, and reasonable doubt. The Court will go over it but I will briefly give you a little summary of that lens.

The government has the burden of proof in this case and it is a heavy burden. It is the highest of them.

First, it is so heavy, this burden, because Mr. John is presumed innocent. He was innocent the moment he walked into this courtroom. He was innocent the last few days as we sat through this trial. He remains innocent this very moment. He is innocent as you walk back there and you start your deliberations.

Second: The burden of proof. Again, the government has the burden of proof in this case. The law requires that if they were to drag someone into this courtroom, point at him several times like they did during this trial and say he had committed a very specific federal crime, they have to prove each and every element of each and every count that they charge him with. Because Mr. John's presumption of innocence is here and it remains with him, it's a heavy burden. I'll say it again.

The government must prove, before that cloak of innocence comes off of him, they must prove his guilt beyond a

reasonable doubt. And as I said, it is the highest burden in our legal system. It's higher than what it takes to take someone's child from them legally. That means if you think that Mr. John could have persuaded Kaliah to produce those three images that she sent, not guilty. It means that if you think Mr. John likely persuaded Kaliah to create those three images, not guilty. Even if you believe he probably persuaded Kaliah to create those three images, he is not guilty under the law. They, the government, will have not sustained their burden.

The government's evidence must be so compelling that you are convinced beyond a reasonable doubt that Mr. John's words and actions are what persuaded Kaliah to both create those three images at issue in Count One and to send them to him.

As the Judge will instruct, a reasonable doubt means a reason that would make a reasonable person hesitate to act in a manner of importance in their own life. And ladies and gentlemen, there is no more important moment in Mr. John's life, no more important decision in his life, than the decision you are going to make today.

Now, because the government's burden is so heavy, the burden never shifts from the government to Mr. John.

As I already told you, we are not contesting Count Two. We are not contesting that he received and

accessed sexual depictions of Kaliah and Jane Doe. But in our justice system, the government has to prove each element of Count One even if he's guilty of Count Two and even if you don't like what he did in Count Two or what he did at all. Their job doesn't get easier. Their burden does not get lighter.

So if you have questions about whether Kaliah made those three specific videos because Mr. John persuaded her to create them, you have to look to the government for an answer.

If you have questions about why Kaliah sent those specific images to Mr. John, you think maybe it was because she thought he would like them, maybe just because she hoped to get a little more money out of them, but you're not sure because he caused her to make those specific images, you have to look to the government for an answer.

If you are wondering why the government admits that Kaliah sent Mr. John that striptease video in 5473 but they are not charging him with the production, the persuasion to produce and send that video, look to them for answers and those answers have to be proof beyond a reasonable doubt.

What does the government have to prove with respect to Count One? We are going through it one more time. I know it's a little while. The government went through quite a lot.

They must prove beyond a reasonable doubt at least one of two things: One, that Mr. John actually persuaded,

induced, enticed, employed, used or coerced Kaliah to create the three sexually explicit images she sent to him or, two, that he attempted to do so.

Just to be clear for probably the fifth time, there are only three videos, three images that are relevant to Count One. Those videos were identified as the one ending in 099, the one that's IMG_5722, and IMG_5724.

There is another video of Kaliah. It's on the chart, that summary chart that the government showed you at the end, the first video that she sent to him, 5473. They only charged that in Count Two. They apparently didn't see that Mr. John caused her to produce this video that she sent to him during their conversations.

Why does it matter? It matters because we know that Kaliah made this sexual content, this striptease video on her phone before Mr. John requested it without Mr. John requesting it, yet they claim they've proven beyond a reasonable doubt that Mr. John persuaded her to create the other three videos, sir.

The only evidence they rely on to support this claim about the other three videos for the most part is the underlying metadata. What they rely on is not proof beyond a reasonable doubt.

You heard about metadata from Special Agent Scaramella. She testified that she is no forensic expert.

She struggled to answer basic questions about how metadata works.

Mr. John asked whether the metadata provides information about whether an attachment was received or open, and she said: I don't believe it provided that information. She wasn't sure. Mr. John asked her what is the modified date, what does that signify in the metadata? She said she didn't know.

You also heard from FBI Agent Gale and he stated he did not know certain details about the cell phone extraction program's abilities and that a forensic examiner would be better able to answer the questions, but the government chose not to call a forensic examiner, a forensic expert. They can't now rely on metadata that was analyzed and presented to you by someone who admittedly doesn't know much about how it works in order to prove Count One. That is reasonable doubt.

MS. THEODORA: Objection.

THE COURT: Overruled.

MS. HARRIS-CALVIN: That was reasonable doubt because if Kaliah didn't create those videos for Mr. John, if she created them for some other reason where she already had them on her phone for whatever reason when he asked her for a video, he's not guilty of Count One.

Let's talk about the question the government must answer beyond a reasonable doubt.

The question is not whether Mr. John messaged with other girls on Telegram who are not charged here or if he paid them for their sexual content. It's not whether Mr. John persuaded Jane Doe to create and send sexual content. Mr. John is not charged in Count One with persuading Jane Doe. It's not whether Mr. John told Kaliah what kinds of videos he likes. It's not whether Mr. John ended up paying Kaliah for what she did send him. It's not whether Kaliah simply sent him sexual content. And as the Judge will instruct you later, it's not simply whether Mr. John requested content from Kaliah.

The question is did Mr. John persuade Kaliah to create those three specific videos in Count One as opposed to forwarding along something she thought he might like, might like enough to send her some more money. What the government's elements repeatedly shows is that while he requested very specific sexual content, he did not persuade her to actually make that content. Instead, she repeatedly sent other things and a request alone is not enough, and neither is receipt alone of content that he did not persuade her to make.

Kaliah testified that Mr. John responded to her Reddit post and offered her money in exchange for nude photos of herself. We're going to display some items on the screen. They're all from the redacted versions so they can be

displayed to the gallery.

So after he asked for nude photos, not video, they moved on to Instagram.

They negotiated what that exchange would look like. So we'll take a look.

Mr. John said: We got to set up our deal. Then asked her what she wanted, what she was open to.

On 3/28, March 28, 2024, they switched to iMessage and he asked: What are you into?

And she says: Anything really.

Then they go back to Instagram and he sends her some money and she says she got it. We know that that money that she got was the $50 CashApp, that first exchange of cash or transfer of cash.

Now, at this point, he only made a request for a new photo, not videos, not masturbation, and then the next evening, unsolicited, she says: Wanna see something? And she sends 5473, a video of her stripping, turning around and showing her behind.

Remember, the government isn't even claiming that she created this video for him, even though they talked about money, even though he sent her money, even though he asked for her for nudes. She apparently just sent it because she wanted to or maybe she wanted some more money. We don't know.

He tells her she's beautiful and she begins

negotiating on her own, not because he persuaded her to.

She immediately asks for a tip. He asked how much. And she asks how much does he think she deserves. And he makes a specific request that if she wants to make something special, she can make a POV, point of view video, with specific words including, "Tell daddy how much you want to fuck him." She asks how much he would give her for that. He asked how much she needed for what she wants to buy, you know, the clothes and the makeup and the self care we talked about when she testified. And she says he can give her what he wants to give her.

Then he sends $20. She does not immediately send him anything. They just go on talking about daily life for two days. And she never actually sent him the requested video with him calling -- her calling him "daddy," excuse me, or saying that she wanted to fuck him.

There was a request but there was not production.

It is true that two days later, he asked: How do you feel about my request? Again, seemingly referring to the POV video about "daddy" and having sex that she never created.

In response, she said she had gotten horny and did it the night before but she did not have her phone.

Ladies and gentlemen, she may have wanted to do this for Mr. John at his request, but she admitted that she did not have her phone and so she could not make it. A request. No

production.

Then Mr. John asks her: What would you like from me?

She responds: Anything. LOL.

He says: I mean in general. What do you want? What do you want? What do you want this to be between us? What's your goal? I know mine.

She replies: Umm, for fun and for money. Followed by I think it was three smiley faces.

She follows by posing the question back to him and he says he just wants someone to chat with and to have extra fun stuff with.

Then they changed subjects. They talk about her nickname, the kinds of things she likes to buy with that money, her preference for goth clothing, what she and her friends are doing on Instagram life. She says she's into grunge, apparently the goth clothing that they were talking about. And he asked if she would like to model some of that stuff, the goth or grunge clothing they were just talking about.

Then one minute later, she sends the video that ends in 099 that is charged in Count One. For two days, they had been chatting about all manner of non-pornographic things.

Then he asks her to model her grungy clothing or her little outfits, but she knows she isn't going to get money for

clothing so she sent a video of herself masturbating. He didn't ask her for that, but you'll also see that Mr. John couldn't access it. He told her to send "whatever it is that she sent via iMessage."

So at this point, they're on Instagram. He's saying whatever you sent me, send it to iMessage. He did not even know that what she sent was a sexual video because he had asked to see her grunge clothes.

But in response, Kaliah said she had already left her house so she couldn't forward it to the iMessage at that moment, yet she did make sure to remind him to look at it later because it was worth looking at later. Worth what? Worth the money that she wanted him to send.

Then she follows up to make sure he looked at it. She says: Seen?

She suggested that she had sent something he wanted, something he liked: I did what you wanted. That, in fact, was not what he had requested.

And she asked what he meant, "WYM." He explained that what he meant was riding a makeshift dildo. Apparently, that's something he's asked other girls. She responds that she doesn't want to.

I really don't want to. Do I have to? I don't feel comfortable with that.

He says: A marker? It's okay though. It's okay

though.

She said she didn't want to do it and he said it's okay. He let it go. That is not persuasion. That is not inducement. That is not enticement.

Think about all of the other ways this could have gone down if Mr. John were guilty of Count One, if he had persuaded her to make that video.

He could have answered yes, you do have to. He could have told her that if she really cared about him, she really wanted some money, she would do it.

He could have urged her: Well, you already sent other videos. If you don't make this one, I'm going to post the other ones or share the other ones. He could have threatened her in some way to coerce her. But he didn't do any of that. He said: It's okay. That is the opposite of persuasion.

So she decides to send him a video anyway, not one that is a makeshift dildo like he had requested, not a marker. Instead, she sent one in which she's using a vibrator that she told us she already had, and within 90 seconds, another of her masturbating, another video of her masturbating.

Ladies and gentlemen, we have very specific requests and then we have videos that do not match the specific request.

One of those videos the government is not even

claiming he persuaded or coerced or used or enticed or employed her to create.

The evidence shows that this is a sad case. It's a disappointing case. The content is something none of us want to see or look at. But it also shows that he did not persuade or induce or entice her to make those videos. It shows that he had them. It shows that he looked at them. It shows that he's guilty of Count Two.

I want to make sure you understand something. The Judge is going to instruct you that because Kaliah is a minor, she cannot consent, right, to being in pornography and we are not saying that she can do that. She is a teenager. But that is not the case, what this case is about. It's not about whether she agreed to make these videos. It's about whether the government proved beyond a reasonable doubt why she made those three specific videos. It's about whether they proved beyond a reasonable doubt that she made those three videos because Mr. John persuaded her to make those videos and that, and persuaded her to send videos that he had her make, not because she created the videos on her own and the evidence shows that Kaliah is sending videos to Mr. John because she wanted money, not because he overcame her resolve, I guess the whole concept of making sexy videos as they opened with to begin this case.

With respect to Count One, the government has left

gaping holes in that theory and each of those holes with respect to Count One is a reason to doubt that they have proven every element of the sexual exploitation of Kaliah.

Now, the government does have an alternate theory and that is attempted sexual exploitation. Ms. Theodora talked about that a little bit. The government will instruct you on intent. But the government similarly has not carried its burden with respect to attempt of Count One.

In order to prove Mr. John's guilt beyond a reasonable doubt, the government must prove more than his mere intent, his desire to persuade, induce, entice, use, employ or coerce Kaliah. They must prove beyond a reasonable doubt that his actions amounted to a substantial step -- not a step, a substantial step -- towards achieving that goal.

What does that mean? That means if you believe he merely wanted to commit the crime of sexual exploitation, that is not enough. If you believe he planned to commit the crime, that is not enough. That means if he arranged a means for committing the crime of sexual exploitation of Kaliah, that is not enough for attempt. The fact that Kaliah sent him a sexy video, sexually explicit video is not a substantial step in and of itself.

If you walk back there and you are unsure about whether anything Mr. John did or said was a substantial step, then the government has not met its burden with respect to

their attempt theory in Count One, and that would mean Mr. John's presumption of innocence has not dissipated.

When you walk back into the deliberation room, think about the videos, those three videos, that do not match Mr. John's stated intentions or desires. Think about the fact that one of the videos she sent, while sexually explicit, the government doesn't even claim he persuaded her to create. That is 5473.

The evidence that she is sending sexual videos, think about that. Think about that she sent him sexually explicit videos when he was not even actively requesting that. And think about the evidence that Kaliah wants to send videos because she wants money for the things that she likes, not because he has overcome her resolve and persuaded her to do things that she really did not want to do as the government has claimed.

I have only this one opportunity to talk to you before you go back there and because the government carries this very heavy burden, Ms. Theodora will come back up and talk to you again. All of us on the defense will just have to sit there. We won't get to come back and be able to rebut what they say.

I imagine, like they did in their first time up here with you today, they're going to come up here and harp on the parts of the case that we are not disputing. Elements that we

are not disputing, the emotions, the sadness, the disappointment, disgust, anger, you name it, the icky feelings this case raises in all of us, but none of that is the question here. None of that is at issue here. None of that is what you have to decide back there.

The question is has the government proven each element of Count One, because we've conceded Count Two, beyond a reasonable doubt and I submit to you, ladies and gentlemen, that when you look at the government for answers to the many questions I pose, the many reasons to doubt I posed to you, when you look at them for those answers even after coming back up here and talking to you, you will come to the only just, the only fair and the only true verdict in this case and that is as to Count One, Mr. John is not guilty.

Thank you.

THE COURT: We'll hear the government's rebuttal.

MS. THEODORA: Members of the jury, Ms. Harris-Calvin got up here and asked you to look for us, look to the government for answers. I am happy to provide those answers to you right now to the extent you have any questions about this case. Here are the answers.

The defendant is guilty of Count Two. Full stop. His counsel just told us that he's not contesting Count Two.

So let's focus on Count One. Let's focus on Kaliah only.

I explained to you in my closing how you know how the three videos that we looked at, the one ending in 099, 5722 and 5724, were clearly made for this defendant. You have the exact transcript, the electronic receipts, the metadata, it's all there for you.

Counsel argued that the defendant did not persuade her to make these videos and I submit to you that that is just completely baseless.

The defendant, of course, never has the burden to prove anything. It's all on us. We have the burden to prove everything here beyond a reasonable doubt, but that doesn't mean that the defendant can suggest wild theories that have no basis in the record and point to that as reasonable doubt.

There is one thing that the defendant and the government agree on and that is the government's burden in this case. That is the fact that reasonable doubt is a high burden and we have met it in this case.

You will hear the Judge instruct you on what it means to have a reasonable doubt and I expect you will hear that reasonable doubt is not a whim, it's not speculation, it's not conjecture. We embrace that burden. That's why I got up here and presented to you with message after message, chat after chat, account after account. We have presented enough evidence to you all so you can be confident in your decision and be confident that we've met our burden.

I have -- I stood up here, the government stood up here and we walked, I submit that we walked you carefully through the evidence that proves Count One, the three videos, and I submit to you that Ms. Harris-Calvin was not similarly careful with that evidence.

MS. HARRIS-CALVIN: Objection.

THE COURT: Overruled.

MS. THEODORA: She told you she was focusing on Count One, but then she spent a lot of time talking about the video that we all agree is not part of Count One, 5473. I submit to you that that was by design. That was distraction. That was distraction from the absolutely overwhelming evidence that we saw in this trial.

Counsel spent a lot of time talking about how Kaliah wanted to make money. Yes, she did. It is illegal to employ a minor to produce child pornography. The Judge will instruct you, as Ms. Harris-Calvin mentioned, that minors cannot consent to producing child pornography. We showed you CashApp payment after CashApp payment. Those payments came after -- some of those payments came after the three videos that we're alleging are part of the production count. That wasn't to produce child pornography. The defendant didn't need to do anything more than that.

And let's talk about the sexual conduct that the defendant used Kaliah to engage in to make the videos.

Are we really arguing about how this 13 year old girl did or did not specifically follow the defendant's instructions to insert a marker into her vagina? The 13 year old girl who came up here and told us that she told him about her standardized testing for third to eighth graders? The 13 year old girl who told him about playing outside with her nine-year old sibling? Who told us about having classes with her 13 year old best friend?

Kaliah got up here in front of everyone and she told us that she had never done this before, that she had never inserted a marker into her vagina and rode it, what this adult man was asking her to do. She tried, as a seventh grader, I submit to you, to understand what he was saying to her. He told her to show her face. She did that. He told her you've got to enjoy yourself. She tried. She used a vibrator. He said if you don't want to use a marker, you need to enjoy yourself at least, and she did that.

Counsel also showed you some messages about how the defendant and Kaliah talked about all manner of non-pornographic things. This is the grooming that I was talking about earlier. This is the substantial step that you can find that the defendant took and intended to commit the crime of child, sexual exploitation of a child.

And to the extent -- counsel came up here and talked a little bit about the reliability, I believe, of the metadata

or the extractions in this case. The extractions, the agents told you, were performed with Cellebrite. That's the gold standard in the industry. It's reliable.

MS. HARRIS-CALVIN: Objection. Facts not evidence.

THE COURT: Overruled. I think the exact word wasn't used but the gist of it. It's a fair comment.

MS. THEODORA: The extractions were reliable in this case. There's nothing in the record to say that they weren't. Anything would be mere speculation or conjecture on that end.

And we've shown you -- just by the way, we've shown you extractions from Jane Doe's phone. We've shown you an extraction from the defendant's phone. We've shown you Instagram records which came from Meta, the owner of Instagram. They all corroborate the same thing. They're all from different sources. They all corroborate the same thing.

Members of the jury, every case is important, as Ms. Harris-Calvin told you, but not every case is complicated.

This case is straightforward. You have the defendant's own messages, the videos, the payments, the records. You have the entire digital trail of this crime, of both crimes but, in particular, of Count One with Kaliah. This evidence proves beyond a reasonable doubt that the defendant committed both crimes charged in this case and as you've seen in this courtroom from the evidence, the defendant has spent his time hiding behind screens and manipulating

children. He cannot hide from the evidence that we showed you here and he cannot manipulate his way out of this evidence.

MS. HARRIS-CALVIN: Objection. Burden shifting.

THE COURT: Overruled.

MS. THEODORA: I --

THE COURT: Hold on a second. Overruled.

Go ahead.

MS. THEODORA: He, of course, has no burden. I told you we embrace that burden and that is why we ask you, because of the overwhelming evidence that we have presented to you, we ask that you return the only verdict that is consistent with the evidence and the law in this case, and that is guilty on both Count One and Count Two.

Thank you.

THE COURT: Okay. Ladies and gentlemen, we're going to take a five minute recess and then I'm going to give you my jury instructions.

(Jury exits.)

THE COURT: Okay. We'll take a five-minute recess.

(Recess taken.)

(Continued on next page.)

(Continuing.)

THE COURTROOM DEPUTY: All rise.

THE COURT: Okay. We'll bring the jury out.

THE COURTROOM DEPUTY: Oh, defendant.

THE COURT: Oh, I'm sorry.

THE COURTROOM DEPUTY: All right. Coming through.

(Jury enters at 11:43 a.m.)

THE COURTROOM DEPUTY: Thank you.

THE COURT: Please be seated.

All right, ladies and gentlemen, you see that on your chairs we have left two documents. One is the verdict sheet. You can put that aside for now. The other is the charge. Our practice, our procedure is for me to read it to you out loud here in open court. You can follow along if you like or you can just listen if you like.

Members of the Jury, you have now heard all the evidence in the case as well as the final arguments of the parties. We have reached the point where you are about to undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them, just

as it has been my duty to preside over the trial and to decide what testimony and evidence were relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

It is your sworn duty, and you have taken the oath as jurors, to determine the facts and to follow the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be.

I remind you that in reaching your verdict, you are to perform your duty of finding the facts without bias or prejudice as to any party. You must remember that all parties stand as equals before a jury in the courts of the

United States. It would also be improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process. This case is important to the defendant, Dewitt John, who is charged with crimes. Equally, it is important to the Government for the enforcement of criminal laws is a matter of prime concern to the community.

The fact that the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party. By the same token, the Government is entitled to no less consideration. The Government and the defendant stand as equals at the bar of justice. Your verdict must be based solely on the evidence or the lack of evidence.

In determining the facts, you must rely upon your own recollection of the evidence. What is evidence? Evidence consists only of the testimony of witnesses, the exhibits that have been received, and the stipulations of the parties. The statements and arguments made by the lawyers are not evidence. Their arguments are intended to convince you what conclusions you should draw from the evidence or lack of evidence. Now, those arguments are important. You should weigh and evaluate them carefully. But you must not confuse them with the evidence. As to what

the evidence was, it is your recollection that governs, not the statements of the lawyers.

In this connection, you should bear in mind that a question put to a witness is never evidence. It is the answer to the question that is evidence. One exception to this is that you may not consider any answer that I directed you to disregard or that I ordered to be stricken from the record. You are not to consider such answers.

There are two types of evidence that you may properly use in deciding whether the defendant is guilty or not guilty of the crime with which they are charged. One type of evidence is called direct evidence. Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or observed. In other words, when a witness testifies about a fact in issue that is known of the witness's own knowledge, by virtue of what he or she sees, feels, touches, or hears, that is called direct evidence of that fact.

The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts. There is a simple example of circumstantial evidence that is often used. Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day

outdoors. Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet. Somebody else then walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining. That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or the nonexistence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven. Many material facts, such as state of mind are rarely easily proven by direct evidence. Usually such facts are established by circumstantial evidence and the reasonable inferences you draw. Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that before convicting a defendant, the jury must be satisfied of the defendant's guilt beyond a

reasonable doubt based on all the evidence in the case.

You should draw no inference or conclusion for or against any party by reason of lawyers or Mr. John, who is proceeding *pro se*, making objections or my rulings on such objections. Counsel have not only the right, but the duty to make legal objections when they think that such objections are appropriate. In addition, you should draw no inference or conclusion for or against any party by reason of anyone's conduct or comments during the trial other than the conduct and statements of witnesses who took the witness stand and testified.

Nothing I say is evidence. If I commented on the evidence at any time, do not accept my statements in place of your recollection or your interpretation. It is your recollection and interpretation that govern. Also, do not draw any inference from any of my rulings. The rulings I made during trial are no indication of any view on my part. You should not seek to find any such view or opinion on my part, nor should you otherwise speculate as to what I may think. Further, do not concern yourself with what was said during my discussions with counsel. Those discussions related to rulings of law.

At times I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times I asked a question myself.

Any questions that I asked or instructions that I gave were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case by reason of any comment, question, or instruction of mine. Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you. That is entirely your role.

A word about how evidence was obtained. During the trial, you heard testimony about evidence obtained pursuant to search warrants or subpoenas of a variety of social media accounts and other locations. Evidence obtained from the searches and the subpoenas was properly admitted in this case and may be considered by you. Whether you approve or disapprove of how this evidence was obtained should not enter into your deliberations because I now instruct you that the Government's use of this evidence is entirely lawful. You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved the defendant's guilt beyond a reasonable doubt.

I am going to give you a few general instructions

as to how you may determine whether witnesses are credible and reliable, whether the witnesses told the truth at this trial, and whether they know what they are talking about. How do you determine that? It is really just a matter of using your common sense, your good judgment, and your experience.

First, consider how well the witness was able to observe or hear what he or she testified about. The witness may be honest, but mistaken. How did the witness's testimony impress you? Did the witness appear to be testifying honestly? Candidly? Were the witness's answers direct or were they evasive? Consider the witness's demeanor, manner of testifying, and strength and accuracy of recollection. Consider whether any outside factors might have affected a witness's ability to perceive events. Consider the substance of the testimony.

How does the witness's testimony compare with other proof in the case? Is it corroborated or is it contradicted by other evidence? If there is a conflict, does any version appear reliable, and if so, which version seems more reliable.

In addition, you may consider whether a witness had any possible bias or relationship with a party or any possible interest in the outcome of the case. Such a bias or relationship does not necessarily make the witness

unworthy of belief. These are simply factors that you may consider.

If a witness is interested in the outcome of the trial on one side or the other, you may consider such interest in determining how much credit or weight you will give to his or her testimony. A witness is an interested witness when by reason of relationship, friendship, antagonism, or prejudice in favor of or against one side or the other, his or her testimony in your judgment is biased or likely to be biased toward the side which he or she favors.

In determining the credibility of a witness, you may consider whether such witness has any bias or prejudice for or against any party in the case. In determining the credibility and the weight to be given to the testimony of a witness, you should take into account such bias or prejudice. Evidence that a witness is biased or prejudiced for or against a party requires you to view the witness's testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny.

Keep in mind, however, that you should not reject the testimony of an interested witness merely because of such interest. Nor should you accept the testimony of a witness merely because of such disinterest. It is your duty in the case of all witnesses to accept such testimony as you

believe to be truthful and reject only such testimony as you believe to be false. As I said, interest and disinterest are merely factors you may consider in evaluating credibility.

If a witness made statements in the past that are inconsistent with his or her testimony during the trial concerning facts that are at issue here, you may consider that fact in deciding how much of the testimony, if any, to believe. In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake. A willful falsehood always is a matter of importance and should be considered seriously. You may also consider whether the inconsistency concerns an important fact or merely a small detail, as well as whether the witness had an explanation for the inconsistency, and if so, whether that explanation appealed to your common sense.

If you find that a witness has testified falsely as to any material fact or if you find that a witness has been previously untruthful, you may reject that witness's testimony in its entirety, or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone, not the lawyers, or the witnesses, or me as Judge, to decide the

credibility of witnesses who appeared here and the weight that their testimony deserves. You do not leave your common sense, good judgment, or life experiences behind you when you walk into the courtroom. You carry that background into the jury room during your deliberate -- deliberations. Please remember, however, that you may not use your experience and common sense to fill in or create evidence that does not exist. You use them only to draw reasonable inferences from proven facts or to weigh and evaluate the evidence provided during the trial.

In addition, you have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual to call a witness without such consideration.

The Court has decided that certain witnesses were able to testify and be identified in open court by pseudonym

or first name only. The full names of these witnesses are known to the Court, the parties, and were disclosed to you, the jury, at trial. Allowing a witness to testify by a pseudonym in this court -- in court is simply intended to protect that witness's privacy. You should not make any inferences as to the defendant's guilt or non-guilt from the fact that certain names are being withheld from the public.

You have heard the testimony of law enforcement witnesses. The fact that a witness may be employed as a law enforcement official or employee does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. It is your decision after reviewing all the evidence whether to accept the testimony of a law enforcement witness, as it is with every other type of witness, and to give to that testimony the weight you find it deserves.

The Indictment charges in or about and between certain dates. The proof need not establish with certainty the exact date of an alleged offense. It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the dates alleged.

Although the Government bears the burden of proof beyond a reasonable doubt and although a reasonable doubt

can arise from lack of evidence, you are instructed that there is no legal requirement that the Government use any specific investigative techniques or pursue every investigative lead to prove its case. The Government, its agents, and employees are not on trial and law enforcement techniques are not your concern. Therefore, although you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why they used the techniques that they did or why they did not use other techniques.

Additionally, the law does not require that all papers or things mentioned during the course of the trial be produced as exhibits. Your concern is to determine whether or not on the evidence presented or lack of evidence the defendant's guilt has been proved beyond a reasonable doubt. In this regard, I also charge you that all persons who may have been present at any time or place mentioned in the case, or who may appear to have some knowledge of the issues in this case, need not be called as witnesses. Both the Government and the defense have the same right to subpoena witnesses to testify on their behalf. There is no duty on other -- on either side, however, to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence. I remind you, however, that

because the law presumes that the defendant is innocent, the burden of proving his guilt beyond a reasonable doubt is on the Government throughout the trial. The Defendant does not have the burden of proving his innocence or of producing any evidence or calling any witnesses at trial.

All right. We turn now to the substantive instructions. The Defendant is formally charged in an Indictment. As I instructed you at the outset of this case, the Indictment is a charge or an accusation. The Indictment is not evidence, and it does not purport to prove or even indicate guilt. Hence, you are to give it no weight in deciding the guilt or non-guilt of the defendant. What matters is the evidence you heard at this trial. Indeed, again, the defendant is presumed innocent, and it is the Government's burden to prove the defendant's guilt beyond a reasonable doubt.

The Indictment in this case contains two separate counts against Mr. John. You will be called upon to render a separate verdict on each count. Each of these counts is a separate offense or crime. Whether you find the defendant guilty or not guilty as to one count should not affect your verdict as to the other count. I will go over them in detail, but let me summarize them now.

Count 1 charges the defendant with sexually exploiting a minor, or in the alternative, attempting to

sexually exploit a minor, Kaliah, for the purpose of creating child pornography. Count 2 charges the defendant with accessing with intent to view child pornography.

During these instructions, you will hear me use from time to time the words "knowingly" and "intentionally." I will define these terms for you now. A person acts knowingly if he or she acts purposefully and voluntarily, and not because of ignorance, mistake, accident, or carelessness.

A person acts intentionally when he or she acts deliberately and purposefully. That is, a person's acts must have been the product of his or her conscious, objective decision rather than the product of mistake or accident.

As I will explain further, you will be required to make determinations about the defendant's state of mind, something that rarely can be proved directly. Whether the defendant acted with any particular state of mind may be proven by his conduct and by all of the facts and circumstances surrounding the case. Indeed, experience has taught us that frequently actions speak louder and more clearly than words, and in your everyday affairs you are frequently called upon to determine a person's state of mind from his or her words and actions in a particular circumstance.

Count 1 alleges that the defendant employed, used,

persuaded, induced, enticed, or coerced a minor for the purpose of creating visual depictions of a minor's engagement in sexually conduct -- sexually explicit conduct, or, in the alternative, that he attempted to do so.

Specifically, Count 1 -- and I'm reading now from the Indictment -- states as follows: In or about and between March 2024 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, Dewitt John, together with others, did employ, use, persuade, induce, entice and coerce a minor; to wit, Kaliah, an individual whose identity is known to the Grand Jury, to engage in sexually explicit conduct and knowingly and intentionally attempt to do so, for the purpose of producing one or more visual depictions of such conduct and for the purpose of transmitting a live visual depiction of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using any means and facility of interstate and foreign commerce and which would be in and affecting interstate and foreign commerce; which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer; and which visual depictions were actually transported and transmitted

using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce.

To prove the crime charged in Count 1 the Government must establish each of the following elements beyond a reasonable doubt:

First, the victim was under the age of 18. The Government need not prove that the defendant knew that the relevant minor was under the age of 18.

Second, the defendant used, employed, persuaded, induced, enticed, or coerced the victim to engage in sexually explicit conduct for the purposes of producing or transmitting a visual depiction or live visual depiction of that conduct.

Third, the visual depiction was mailed or actually transported or transmitted in or affecting interstate or foreign commerce or the defendant knew or had reason to know that it would be mailed or transported or transmitted in or affecting interstate or foreign commerce.

If you find that the Government has proven each of these elements beyond a reasonable doubt, then you must find the defendant guilty of Count 1. On the other hand, if you find that the Government has not proven one or more of these elements, then you must find the defendant not guilty of Count 1.

Let me discuss these elements in more detail. The first element, the victim was under the age of 18: As to the first element, the Government must prove beyond a reasonable doubt that the victim was younger than 18 years old at the time of the acts alleged in the Indictment. The relevant victim here is Kaliah. As I previously instructed you, the Government need not prove that the defendant knew that the minor was under the age of 18.

The second element that the Government must prove beyond a reasonable doubt is that the defendant used or employed or persuaded or induced or enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. The words "persuade," "induce," and "entice" are, in effect, synonyms that convey the idea of leading or moving another person, by persuasion or influence, to some action, state of mind, or the like, or to bring about, produce, or cause.

The word "coerce" means to compel by force, intimidation, or authority without regard for individual desire or volition. Otherwise, I instruct you that the words "used," "employed," "persuaded," "induced," "enticed," and "coerced" are words of common usage, and I instruct you to apply -- to interpret these words by using your own common sense.

The Government must prove only that a defendant

took one of those actions and not that the defendant did each and all of these things. Put another way, if a defendant used or employed or persuaded or induced or enticed or coerced a minor, any one of those terms is sufficient to satisfy this element of the crime. A mere request to produce visual depictions is not sufficient.

Additionally, it is not sufficient for the defendant to have used, employed, persuaded, induced, enticed, or coerced a minor into merely sending a visual depiction, or that the defendant merely received them. The Government must prove beyond a reasonable doubt that the defendant used, employed, persuaded, induced, enticed, or coerced a minor to take part in sexually explicit conduct for the purpose of producing the visual depictions. Whether or not a minor consented to engage in sexually explicit conduct is irrelevant, as the consent or voluntary participation of a minor is not a defense to the charge. A minor cannot legally consent to engage in sexually explicit conduct.

A visual depiction includes any photograph, video, data stored on computer disc or by electronic means that is capable of conversion into a visual image, or data that is capable of conversion into a visual image that has been transmitted by any means. A visual depiction includes a digitally recorded photograph or video.

Sexually explicit conduct means actual or simulated sexual intercourse, including genital/genital, oral/genital, anal/genital, or oral/anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

The term "lascivious exhibition" means a depiction that displays the genitals or pubic area of a person under the age of 18 to excite lustfulness or sexual stimulation in the viewer. Not every exposure of the genitals or pubic area constitutes lascivious exhibition.

In deciding whether a particular visual depiction constitutes a lascivious exhibition, you may consider the following questions, but you need not find all of the following: One, whether the focal point of the visual depiction is of the child's genitals or pubic area, or whether there is some other focal area; whether the setting of the visual depictions makes -- makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity; whether the child is displayed in an unnatural pose or in inappropriate attire, considering the age of the child; whether the child is fully or partially clothed or nude, although nudity is not in and of itself lascivious; whether the visual depiction suggests sexual coyness or a willingness to engage

in sexual activity; and six, whether the visual depiction was intended or designed to elicit a sexual response from the viewer.

It is not required that a particular visual depiction involve all of the factors that I have listed for you. The importance you give to any one factor is up to you to decide.

Here, the Government alleges that the defendant is guilty of Count 1 based on three videos. These were identified at trial as, one, the unified_message -- I'm not going to read all the numbers there -- ending in 099.MP4; two, IMG_5722.MOV; and three, IMG_5724.MOV. You must unanimously find that the Government has proven beyond a reasonable doubt that the defendant is guilty of Count 1 with regard to at least one of these videos. But you do not have to unanimously find that he is guilty with regard to all three videos listed above.

The third element that the Government must prove beyond a reasonable doubt is that the visual depictions at issue were mailed or transported in or affected interstate commerce. There are alternative ways in which the interstate commerce element may be satisfy -- satisfied.

To satisfy the third element, the Government must prove only one of the following beyond a reasonable doubt. The first way that the Government may satisfy this burden to

prove the interstate commerce element is by proving beyond a reasonable doubt that the visual depiction was actually transported or transmitted in or affecting interstate or foreign commerce. This means that the visual depiction crossed between one state and another or between the United States and a foreign country. Transmission of photographs, videos, or live visual depictions by means of the Internet constitutes transportation in interstate commerce, regardless of whether the communication actually crossed a state line.

The second way that the third element may be satisfied is by proving beyond a reasonable doubt that a defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate or foreign commerce. As I mentioned, interstate or foreign commerce means simply movement between one state and another or between the United States and a foreign country.

To prove the third element in this manner, the Government does not have to prove that the visual depiction was actually transported or transmitted in or during -- I'm sorry -- in or affecting interstate commerce. It is sufficient for the Government to prove that the defendant intended that the visual depiction would be transported or transmitted in or affecting interstate or foreign commerce

or that the defendant had reason to know that his transmission would occur because it was reasonably foreseeable that the defendant's activities would result in the depiction's transmission in or affecting interstate commerce.

Count 1 also provides an alternative charge of attempted sexual exploitation of a child. Before you may convict the defendant as to Count 1, you must unanimously find that he is guilty of sexual exploitation or you must unanimously find that he is guilty of attempted sexual exploitation or both. You will be provided a verdict sheet that will allow you to indicate whether, if you find the defendant guilty of Count 1, you unanimously find that the defendant is guilty of sexual exploitation of the minor identified as Kaliah, you unanimously find that he is guilty of attempted sexual exploitation of Kaliah, or if you unanimously find that he is guilty of both, the sexual exploitation and attempted sexual exploitation of Kaliah.

I will now explain to you the elements that the Government needs to prove for you to find the -- the defendant guilty of attempted sexual exploitation of a child. To prove the defendant's guilt on Count 2 -- I'm sorry -- of attempt on Count 1, the Government must prove two elements beyond a reasonable doubt:

First, the defendant intended to commit the crime

of sexual exploitation of a child, the elements of which I have just explained to you; and second, the defendant acted in a manner that was a substantial step in an effort to bring about or accomplish the crime.

For you to find the defendant guilty of the crime charged in Count 1, or in the alternative, you do not need to find that he committed the crime of sexual exploitation of a trial -- of a child and fulfilled each of the elements I previously described to you. You need only to find that he intended to commit the crime of sexual exploitation of a child and took a substantial step in an effort to bring that about. I explained the underlying substantive crime of sexual exploitation of a child because it is charged in Count 1.

I remind you that the defendant is charged in Count 1, in the alternative, with attempting to sexually exploit a child and not with sexually exploiting a -- a child. Mere intention to commit a specific crime does not amount to an attempt.

Let me -- let me -- that sentence is a little unclear. The defendant is charged in Count 1 in -- in -- in two respects: First, that he actually sexually exploited a child; and second, that he attempted to sexually exploit a child. We're asking you that if you fund that he's guilty on Count 1 to answer both. You can either answer just one

or you can answer both. And you can find him guilty on just one or the other or both, but we're asking you to make the decision on -- on both. In other words, he is charged both with sexually exploiting a child and with attempting to do so. That first sentence was a little -- a little garbled there.

To convict the defendant of an attempt, you must find beyond a reasonable doubt that the defendant intended to commit the crime charged in Count 1, and that he took some action which was a substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.

Count 2 alleges that the defendant accessed, with

the intent to view, child pornography. So Specifically, Count 2 -- and I am reading from the Indictment -- states as follows: In or about and between March 2024 and April 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, Dewitt John, did knowingly and intentionally access with intent to view matter which contained one or more visual depictions, to wit, digital videos and images accessed using (A) Instagram account @spongebobdoodlepants23, and (B) Apple account @shane-matt@hotmail.com, that had been mailed and had been shipped and transported using one or more means and facilities of interstate or foreign commerce and in and affecting interstate and foreign commerce, and which were produced using materials which had been mailed and so shipped and transported, by any means including by computer, the production of such visual depictions having involved the use of one or more minors engaging in sexually explicit conduct, and such visual depictions having been of such conduct.

To prove the crime charged in Count 2, the Government must establish each of the following elements beyond a reasonable doubt: First, the defendant, using the Instagram account @spongebobdoodlepants23 and Apple account @shane-matt@hotmail.com, knowingly accessed one or more

depictions.

(Continued on the next page.)

THE COURT: Second, the visual depictions had been transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce. Well, you can ignore this last phrase: Or the visual depiction was produced using materials that have been transported in interstate or foreign commerce. You can ignore that. That's not relevant to this case.

The production of the visual depiction.

I'm sorry.

Third, the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and portrayed that minor engaged in that conduct.

And fourth, the Defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and portrayed a minor engaged in that conduct.

If you find that the Government has proven each of these elements beyond a reasonable doubt, then you must find the Defendant guilty of Count Two. On the other hand, if you find that the Government has not proven one or more of these elements, then you must find the Defendant not guilty of Count Two.

Let me discuss these elements in more detail.

The first element the Government must prove beyond a reasonable doubt is that the Defendant knowingly accessed one

or more visual depictions and did so with the specific intent to view them. The Government may satisfy this element by proving that the Defendant knowingly accessed one or more visual depictions using the accounts referenced in the indictment; Spongebobdoodlepants23 and shane-matt@hotmail.com. I have already explained the meaning of the terms "knowingly" and "visual depiction", and those instructions apply here. To access means to open, enter, load, or use.

Here, the Government alleges that the Defendant is guilty of Count Two based on four videos and one image. These were identified at trial as, one, IMG_5473.MOV; unified message -- I'm not going to read all the numbers -- ending in 099.MP4; three, IMG_5722.MOV; four, IMG_5724.MOV; and five, unified message -- I'm not going to read all the numbers -- ending in 033.JPG.

You must unanimously find that the Government has proven beyond a reasonable doubt that the Defendant knowingly accessed at least one of the visual depictions listed above, but you do not have to unanimously find that he is guilty with regard to all five of the depictions listed above.

The second element that the Government must prove beyond a reasonable doubt is that the visual depiction had been mailed or transported using any means or facility of interstate or foreign commerce, or in affecting interstate or foreign commerce, or produced using materials which have been

transported in interstate or foreign commerce.

As in Count One, the Government may prove this element in at least two ways:

First, the Government may prove this element by showing that the specific image or video in question was transported -- transmitted, that is, by means of the internet.

Second, the Government may also prove this element by showing that the materials -- I don't think we need this one either. I must have taken out the wrong one.

Okay. Let me read it. Some of it might be helpful.

The Government may also prove this element by showing that the materials used to produce the visual depiction had previously moved from one state to another or between the United States and another country. Producing a visual depiction includes copying, transferring, storing, or saving the visual depiction to a computer or to any electronic disc or drive. The Government does not have to prove that the Defendant personally transported the computer equipment across a state line, or that the Defendant knew that the computer equipment had briefly crossed a state line, or that the computer equipment was used to create the visual depictions in the first instance.

The third element that the Government must prove beyond a reasonable doubt is that the production of the visual depiction involved the use of a minor engaging in sexually

explicit conduct and portrayed that minor engaged in that conduct.

As I previously instructed you, a minor is defined as a real person under the age of 18 that the Government does not have to prove the identity of the minor or the exact age of the minor. You may consider all the evidence, including your viewing of the depiction, in determining whether the depiction portrayed is an actual person under the age of 18 engaging in sexually explicit conduct. I've already explained the meaning of sexually explicit conduct or lascivious exhibition. Those instructions apply here.

The fourth element that the Government must prove beyond a reasonable doubt for Count Two is that the Defendant knew both that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and that it portrayed a minor engaged in that conduct.

As I stated before, an act is done knowingly when it is done voluntarily and intentionally and not because of accident, mistake, or some other innocent reason. For this element, the term "knowingly" refers to an awareness of the sexually explicit nature of the material and to the knowledge that the visual depictions were, in fact, of actual minors engaged in that sexually explicit conduct. The Government must show that the Defendant had knowledge of the general nature of the contents of the material. The Defendant need

not have specific knowledge as to the identity or actual age of the minor, but the Defendant must have knowledge or an awareness that the material contained a visual depiction of a minor engaging in sexually explicit conduct. Such knowledge may be shown by direct or circumstantial evidence or both.

Eyewitness testimony of the Defendant's viewing of the material is not necessary to prove his awareness of its content. The circumstances may warrant an inference that he was aware of what the material depicts. Furthermore, the Defendant's belief as to the legality or illegality of the material is irrelevant.

All right. Some final instructions.

The Defendant has pleaded not guilty. In so doing, he has denied every allegation against him. As a result of the Defendant's plea of not guilty, the burden is on the Government to prove the Defendant's guilt beyond a reasonable doubt for each and every element of each charged offense. This burden never shifts to the Defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence at all. Remember that a defendant in a criminal case is never required to prove that he is innocent. The law presumes that a defendant is innocent of all charges against him.

The Defendant began the trial here with a clean

slate. This presumption of innocence alone is insufficient to acquit him unless and until you as jurors are unanimously convinced beyond a reasonable doubt of his guilt. After a careful and impartial consideration of all of the evidence in this case, if the Government fails to sustain its burden, you must find him not guilty. This presumption was with the Defendant when the trial began, remains with him even now as I speak to you, and will continue with him into your deliberations unless and until you are convinced that the Government has proven his guilt beyond a reasonable doubt.

Now, the question naturally is: What is reasonable doubt? The words almost define themselves. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs. A reasonable doubt is not caprice or whim. It is not speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

The law does not require that the Government prove guilt beyond all possible doubt. Rather, proof beyond a reasonable doubt is sufficient to convict. The burden never

shifts to the Defendant for it is the Government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt.

If, after a fair and impartial consideration of all of the evidence, you have a reasonable doubt as to the Defendant with respect to a particular offense, you must acquit him of that offense. On the other hand, if, after fair and impartial consideration of all of the evidence, you are convinced beyond a reasonable doubt of his guilt with respect to each and every element of a particular offense, it is your duty to convict him of that offense.

Under our constitution, a defendant has no obligation to testify or to present any evidence because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt. The burden remains with the Government throughout the entire trial and never shifts to the Defendant. Again, a defendant is never required to prove that he or she is innocent.

The Defendant did not testify in this case. You may not attach any significance to the fact that he did not testify. You may not draw any adverse inference against him because he did not take the witness stand. You may not consider this against him in any way in your deliberations in the jury room.

The Defendant decided to represent himself in this

trial, but as you saw, I permitted his standby Counsel to participate from time to time. The Defendant has a constitutional right to represent himself. His decision has no bearing on whether he is guilty or not guilty and it must not affect your consideration of the case. I want to remind you that when the Defendant spoke in cross examining several of the witnesses, he was acting as a lawyer in the case, and his words, therefore, are not evidence.

During the course of the trial, the parties introduced certain documents or other evidence that contained parts that were redacted or blacked out. Those parts were redacted or blacked out for reasons you need not be concerned with. You must not speculate as to how the documents might read without the redactions.

You have heard evidence that the Defendant may have engaged in similar conduct with respect to other minors. The Defendant is not charged with this other conduct. You may consider this evidence only if you unanimously find it is more likely to than not. You decide that by considering all of the evidence in deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt. If you find that this conduct has not been proved, you must disregard it. If you find that this conduct has been proved, you may consider it to help you decide any matter to which it is relevant. You may not give this evidence such weight as --

I'm sorry. You may give this evidence such weight as you think it should receive or no weight. You may consider this evidence for its tendency, if any, to show the Defendant's propensity to engage in child exploitation, as well as its tendency, if any, to determine whether the Defendant committed the acts charged in the indictment. But remember, the Defendant is on trial only for the crimes charged in Counts One and Two. You may not convict a person simply because you believe he may have committed other similar acts, and you may not consider evidence of those other acts as a substitute for proof that the Defendant committed the crimes charged in this case.

Members of the jury, that about concludes my instructions to you. You are about to go into the jury room to begin your deliberations. If, during those deliberations, you want to see any of the exhibits, you may request to see them, and we will either send them back into the jury room or we will bring you back out to the courtroom to see them. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. If you want any further explanation of the law as I have explained it to you, you may also request that from the Court. If there is any doubt or question about the meaning of any part of this

charge, you should not hesitate to send me a note asking for clarification or for a further explanation. Your requests for exhibits or testimony, in fact, any communications with the Court, must be made to me in writing, signed by your foreperson, and given to one of the court security officers. There will always be a court security officer outside the jury room.

In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

Now, many of you have taken notes periodically throughout this trial. I want to emphasize to you, again, as you are about to begin your deliberations that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impression of other jurors, whether from notes or memory with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollections and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

Your verdict must be based solely upon the evidence

developed at trial or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the Government has sustained its burden of proof, any personal feelings you may have about the nature of the crimes charged or any feelings you might have about the race, religion, political affiliation or viewpoint, national origin, gender, or age of the Defendant. Your verdict cannot be influenced by any feelings you have about the parties or anyone else participating in the trial. The parties in this case are entitled to a trial free from prejudice and our judicial system cannot work unless you reach a verdict through a fair and impartial consideration of the evidence.

The question of possible punishment of the Defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations as to whether the Government has proven the Defendant's guilt beyond a reasonable doubt. The duty of imposing sentence rests exclusively upon me. Your function is to weigh the evidence in the case and determine whether the Defendant is guilty beyond a reasonable doubt solely upon the basis of such evidence. Under your oath as jurors, you cannot allow a consideration of the punishment that may be imposed upon the Defendant, if he is convicted, to influence your verdict in any way or in any sense enter into your deliberations.

Under your oath as jurors, you are not to be swayed

by sympathy. You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is: Has the Government proven the guilt of the Defendant beyond a reasonable doubt? It is for you alone to decide whether the Government has proven that the Defendant is guilty of the crimes charged solely on the basis of the evidence and subject to the law as I have charged it to you.

It must be clear to you, once you let fear, prejudice, bias, or sympathy interfere with your thinking, there is a risk you will not arrive at a true and just verdict. If you have reasonable doubt as to the guilt of the Defendant, you should not hesitate for any reason to find a verdict of acquittal. But, on the other hand, if you find that the Government has met its burden of proving the Defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

Your verdict must be unanimous. Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberations. It is your duty to discuss the evidence. If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to questions, then, of course, you should not hesitate in

yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience. You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed. You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case.

Your final vote must reflect your conscientious judgment as to how the issues should be decided.

You should, by your own vote, select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and when you come in to open court, the foreperson will be asked to state what the verdict is.

So as I noted, we have prepared a verdict form for you. That is the additional document you have. You should answer both questions. The foreperson should hold onto -- we gave one to each of you, but the foreperson should hold onto a master or original and fill that out when it's time to reach -- when it's time to come back and deliver your verdict.

After you have reached a unanimous verdict, the foreperson should fill in the verdict sheet, sign and date it, and then give a note to the marshal outside your door stating

that you have reached a verdict. Do not specify what the verdict is in your note. Instead, the foreperson should retain the verdict sheet, hand it to us in open court when you are all called in.

I will stress, again, that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

I am just going to ask you to sit tight for one moment. I will see the lawyers outside and see whether I misread anything or missed anything or whether there are any other issues.

(Sidebar.)

(Continued on the next page.)

(The following occurred at sidebar.)

THE COURT: Did I miss anything? Also any additional exceptions? You don't need to repeat anything that was previously stated.

MS. HARRIS-CALVIN: I think just the errors that you caught, maybe we can correct those. I think that was for Count Two where they put in the production. I don't know if the Court plans --

THE COURT: What page was that? They already have it, so it would be hard to retrieve it, but I can -- what page is it?

MS. HARRIS-CALVIN: I will have to look at it again. It's in the Count Two instruction.

MS. THEODORA: 32.

MS. HARRIS-CALVIN: Yeah, 32.

THE COURT: Page 32. In other words, I can ask them to cross something out.

MS. HARRIS-CALVIN: Well --

THE COURT: On page 30, I had them cross out that. And then on 32, what's on 32?

MS. HARRIS-CALVIN: On 32, it also says producing in that final paragraph.

I'm curious, Your Honor, because we're so close to 1:00 o'clock, are you going to actually send them back?

THE COURT: I'm going to send them back. First of

all, they have their lunch. I will push my appointment to 1:30 or so, that way they can get started.

Is there a suggestion on what I should do on page 32?

MS. HARRIS-CALVIN: So, I guess, this is just the possession count, right?

THE COURT: It still has to have been produced, not necessarily by the Defendant.

MS. HARRIS-CALVIN: Right. I am just -- it might confuse them about whether the --

THE COURT: First of all, it's Count Two. You've conceded Count Two on the record.

MS. HARRIS-CALVIN: We have.

THE COURT: So I'm not sure that it's worth bringing more attention to this, but.

MS. HARRIS-CALVIN: Okay. I mean, you flagged it to them, so I --

THE COURT: I flagged it, but in other words, if you want me to go back and flag it again, I will, but I don't know that I need to.

MS. THEODORA: We agree, Your Honor. And we appreciate Counsel for bringing it up. But we agree. Maybe if they ask a question, we can clarify.

MS. HARRIS-CALVIN: Can you just -- can it just be -- I'm sorry to harp on this, but what really matters is

that the visual depiction moved through interstate commerce or -- never mind. I'm sorry.

I think you're right, we can let it go since we conceded it, and then figure out, if they have a note, what to say.

THE COURT: If there is a note, but I think it is fine the way it is. But if you have a suggestion, I would consider it.

MS. HARRIS-CALVIN: Thank you. I was thinking out loud.

THE COURT: Anything else?

MS. THEODORA: Not from the Government.

MS. HARRIS-CALVIN: No. Thank you.

THE COURT: I am going to let them start. I am going to tell them that, first of all, they have their lunch. I want to give them time to eat their lunch. We will let the alternates take their lunch and go to another room to eat it.

I would always release them, but apparently here in the Eastern District, sometimes you hold alternates.

Did anyone have a view?

MS. FARRELL: I am not terribly concerned, given how short the trial was.

THE COURT: I'm not terribly concerned.

MS. HARRIS-CALVIN: Agreed.

THE COURT: I will release them.

Okay. We're done then.

(Sidebar ends.)

(Continued on the next page.)

(In open court.)

THE COURT: All right, ladies and gentlemen, I'm going to send you back.

Now, first let's swear in the court security officer.

(Court security officer sworn/affirmed.)

THE COURT: Okay. Now, I had said I needed to leave at 1:00, I'm going to push it to around 1:30.

Among other things, you should have your lunch back there, and I want to give you some time to eat your lunch.

The two alternates can go in and get their lunches, and we can either find a place for you to eat them, or you can take them with you, but you are released. You can leave.

Mr. Joe will call you and let you know when we have a verdict, so you know what happened.

But so that's the plan. Go in, enjoy your lunch, work until about 1:30. When you're ready to leave, send us a note. And then the two alternates can go in. Don't discuss the case with the jury, the first 12, but grab your lunches, if you want. And we can either find a place for you to eat or else you can take them with you and go.

And that's it. Ladies and gentlemen, thank you for your patience. You can go ahead in.

THE COURTROOM DEPUTY: All rise.

(Jury exits to begin deliberations at 12:02 p.m.)

THE COURT: All right. I wouldn't go too far for the next 35 minutes or so in case there is a note or, you know, they want to see something. And the plan would be to reconvene at 1:30, and I will send them home until 9:00 a.m. tomorrow.

Okay. Thank you.

(Continued on the next page.)

(In open court; outside the presence of the jury.)

THE COURT: We're going to bring out the jury and we're going to send them home.

(Jury enters at 1:30 p.m.)

THE COURT: Please be seated.

All right. Well, first of all, let me thank our two alternate jurors. As I suggested earlier, you are released. You are free to go and we'll let you know when we have a verdict so that you know what happened, but on behalf of the, my staff, the parties, the lawyers, I want to thank you very much.

As for the jury, the twelve jurors, I'm going to send you home now. Please come back tomorrow morning at 9 a.m. When you come back, just report to the jury room and as soon as you are all here, you can start your deliberations. Don't start discussing the case until all of you are here.

So please be on time because if anyone is late, then you're holding up the others. Once you're all here, you're welcome to commence your deliberations and if there are any exhibits or testimony or further explanations that you want, the foreperson will send out a note.

If you didn't finish tomorrow, you would come back on Friday and continue. And we can go all day tomorrow if you need all day. I don't have any time restrictions tomorrow.

And, again, you've heard the evidence, you've heard

the arguments, you've heard my instructions on the law, but do not discuss the case with anyone and don't do any investigation or research or looking into the internet. Don't discuss the case with anyone until you are back here and you're all convened and only then can you start discussing the case with each other.

That's it. Ladies and gentlemen, have a good evening. We'll see you tomorrow morning at 9 o'clock. Thank you.

THE CLERK: All rise.

(Jury exits at 1:35 p.m.)

THE COURT: Do we have anything to discuss?

MS. THEODORA: No, Your Honor.

MS. HARRIS-CALVIN: No.

THE COURT: We'll see you tomorrow then.

We don't need to gather until there's something but don't be too far away in case there's an early note, we can summon you and discuss it.

All right. Have a good evening. Thanks.

(Matter adjourned to May 7, 2026 at 9:00 a.m.)

# I N D E X

EXHIBITS:

Government's Exhibits 100, 501B, and 205S 455

* * * * *