UNITED STATES DISTRICT COURT.
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA, | : 24-CR-492 (DC) |
| Plaintiff, | : |
| | : United States Courthouse |
| -against- | : Brooklyn, New York |
| DEWITT JOHN, | : |
| | : Friday, May 1, 2026 |
| Defendant. | : 2:00 p.m. |

- - - - - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR A PLEADING
BEFORE THE HONORABLE ORELIA E. MERCHANT
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government: JOSEPH NOCELLA, JR., ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: BROOKE THEODORA, ESQ.
SARAH A. ELARDO, ESQ.
KAITLIN T. FARRELL, ESQ.
ASSISTANT UNITED STATES ATTORNEYS

For the Defendant: DEWITT JOHN
*PRO SE* DEFENDANT
AND
FEDERAL DEFENDERS OF NEW YORK, INC
One Pierrepont Plaza
16th Floor
Brooklyn, New York 11201
BY: JULLIAN HARRIS-CALVIN, ESQ.
KYLA WELLS, ESQ.

Court Reporter: DAVID R. ROY, RPR
225 Cadman Plaza East
Brooklyn, New York 11201
drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand, transcript produced by Computer-Assisted Transcription.

P R O C E E D I N G S

--ooOoo--

(In open court.)

THE COURTROOM DEPUTY: All rise.

The Honorable Orelia Merchant presiding.

THE COURT: Please be seated.

(Defendant's enters the courtroom at 2:30 p.m.)

THE COURT: You can please call the case.

THE COURTROOM DEPUTY: This is a Criminal Cause for a Pleading in the matter of USA versus John in Docket Number 24-CR-492.

Counsel, please state your appearances for record, starting with the Government.

MS. THEODORA: Good afternoon, Your Honor. Brooke Theodora for the Government. I'm joined by Special Assistant United States Attorney Sarah Elardo, Assistant United States Attorney Kaitlin Farrell, and Special Agent Audra Hampsch.

THE COURT: Good afternoon.

MS. HARRIS-CALVIN: And good afternoon, Your Honor. Jullian Harris-Calvin and Kyla Wells of the Federal Defenders of New York. We are here with Mr. John, who is present.

We have a hybrid representation designation for purposes of this hearing. With the Court's approval, we'll

handle it as if I'm representing him normally for the plea -- or the plea hearing.

THE COURT: And when you say "handle it as if I'm representing him normally," what exactly do you mean by that?

MS. HARRIS-CALVIN: Just practically, the questioning back and forth of the Court. I know that the Court typically during a plea hearing if he has been adequately represented by counsel, if he's been able to speak with me and Ms. Wells about the plea and all of the details that the Court will go through. If I feel like he is -- he doesn't have a viable defense, et cetera, as opposed to just asking him alone --

We just got this designation on Wednesday. Before that he was proceeding *pro se*, and it's a complicated -- it complicates the procedure. And so he is fine with us moving forward in the same process as if he is not hybrid or *pro se* so that those same questions can be asked.

If that works for the Court? If not --

THE COURT: Well, my question is, are -- is the representation made that in asking him if he's satisfied with -- if he's gone over the details contained in the Indictment, Superseding Indictment, et cetera, and I direct them to you and whether or not he's had adequate time to speak with counsel, is that you or something else?

MS. HARRIS-CALVIN: That would be me. Before I was just stand-by counsel. But as of Wednesday, I'm hybrid counsel for --

THE COURT: Right.

Well, I'm looking at the notice of appearance, and, again, this is the first time that you all are appearing before me in this matter and I'm handling the plea, and I want to make sure that I am asking the appropriate questions. And more importantly, that capacity is what it should be for responding to the questions that the Court asks. And so I know that there is a notice of appearance that was filed by Ms. Wells on April 30th, which is this week. And so -- and that Ms. Wells, as of that date just represented full capacity -- or something else. And if not, then I just need to understand the docket entry. Because right now, the document reads differently.

And so can you explain that for me, please?

MS. HARRIS-CALVIN: Yes, Your Honor.

So when this case originally came in, I was appointed on the complaint and remained alone as his counsel, until Judge Morrison granted his request to go *pro se* earlier this year and then transferred the case to Judge Chin for purposes of trial.

He, and "he" being Mr. John, had me as solely standby counsel at that point.

THE COURT: Understood.

MS. HARRIS-CALVIN: And then once we decided that he was going to have hybrid representation and he would be going to trial on Monday, Ms. Wells, as herself through the notice of appearance as part of this hybrid counsel collective -- and so that's what that notice of appearance was. And so that's where we are today. But because we are in this kind of unusual representation posture, I spoke with Mr. John and he's fine with the Court proceeding with the questioning and everything the same way you would if Ms. Wells and I were just representing him and he was not also his own counsel in conjunction with us.

But however the Court wants to move forward, obviously, we're fine with. We were just proposing that just for clarity, I think, of the record and ease of going back and forth about whether or not he's been given an opportunity to consult counsel, understand what's happening, et cetera.

THE COURT: Right.

So let me hear from the Government with regard to their position on this.

MS. THEODORA: Yes, Your Honor.

We think that this is the appropriate way to proceed, and we agree with Ms. Harris-Calvin.

THE COURT: And so I will direct all questions to

counsel, as opposed to -- is -- is that the way is what you're --

MS. HARRIS-CALVIN: In the normal way when there's no *pro se* or hybrid --

THE COURT: Yes.

MS. HARRIS-CALVIN: -- representation, correct, exactly.

THE COURT: Okay. For the purposes of this hearing --

MS. HARRIS-CALVIN: Yes.

THE COURT: -- you are serving as his representative?

MS. HARRIS-CALVIN: Correct. Yes, Your Honor.

THE COURT: And I will just -- without piercing any attorney-client privilege through hybrid or otherwise, I want to be clear with Mr. John.

That that is how you wish to proceed, sir?

THE DEFENDANT: That is correct.

THE COURT: Okay. So with that, then, you may be seated.

So we are here today because I understand that Mr. John has indicated that he is prepared to enter a guilty plea to the Superseding Indictment.

Counsel, is that correct?

MS. HARRIS-CALVIN: Yes, Your Honor.

THE COURT: Okay.

Mr. John, this is a serious decision, and I must be certain that you are making it knowingly and voluntarily with the understanding of your rights and the consequences of your plea. I'm going to explain to you the rights that you will be giving up by pleading guilty. In addition, before I accept your guilty plea, there are several questions that I must ask you to establish that it is a valid plea.

If you do not understand any of my questions, please say so, and I will reword the question. If you would like to consult with your counsel at any time for any reason, please let me know, and we will stop the proceeding to allow you to have as much time as you need.

Do you understand that?

THE DEFENDANT: It's understood.

THE COURT: I will need you to answer my questions under oath, so I am going to ask if the courtroom deputy will please administer the oath.

THE COURTROOM DEPUTY: Please stand and raise your right hand, sir.

(Witness sworn.)

THE DEFENDANT: Yes.

THE COURTROOM DEPUTY: Thank you. You may be seated.

**D E W I T T  J O H N**,

having been first duly sworn/affirmed, was examined and testified as follows:

THE COURT: So you understand that you are now under oath, and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or making a false statement.

Do you understand that?

THE DEFENDANT: It's understood.

THE COURT: And in any such prosecution, the Government may use any statements you make under oath here today.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I'm going to have to ask you some questions about yourself and your state of mind at this point. If you can please state your full name.

THE DEFENDANT: Dewitt John.

THE COURT: And how old are you?

THE DEFENDANT: Thirty-six.

THE COURT: And how much education have you had, sir?

THE DEFENDANT: Bachelor's Degree.

THE COURT: Okay. And is your native language English?

THE DEFENDANT: Yes, it is.

THE COURT: I must ask you some questions to make sure that you understand clearly what is happening today, and these questions that I ask are questions that I ask in every proceeding of this kind.

Are you now or have you recently been under the care of a doctor or a psychiatrist for any reason?

THE DEFENDANT: Now no.

THE COURT: Are you taking any medications?

THE DEFENDANT: No.

THE COURT: Have you had any alcohol to drink in the last 24 hours?

THE DEFENDANT: No.

THE COURT: And have you taken any drugs recently, sir?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for drug addiction?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for alcoholism?

THE DEFENDANT: No.

THE COURT: Have you ever been treated for mental or emotional issues?

THE DEFENDANT: Yes.

THE COURT: Okay. When was that? That is how long ago?

THE DEFENDANT: What classifies as "treatment"?

(*Sotto voce* discussion.)

THE DEFENDANT: In 2024.

THE COURT: And are you -- were you prescribed any medication at that time that you believe you should be taking at this time?

THE DEFENDANT: I was prescribed medication for which was never taken.

THE COURT: I'm sorry. I cannot hear you. Can you raise your voice a little bit?

THE DEFENDANT: I was prescribed medication and which was never taken.

THE COURT: Okay.

Do you know the medication that you were prescribed?

THE DEFENDANT: Lexapro.

THE COURT: Is your mind clear now?

THE DEFENDANT: Yes, it is.

THE COURT: Do you understand what you're doing here today?

THE DEFENDANT: I do.

THE COURT: Counsel, are you -- have you had any problems communicating with your client?

MS. HARRIS-CALVIN: Not at all, Your Honor.

THE COURT: Is he capable of understanding the nature of the proceedings here today?

MS. HARRIS-CALVIN: Yes.

THE COURT: Have you discussed this matter with your client in terms of what it means to plead guilty?

MS. HARRIS-CALVIN: Yes.

THE COURT: Have you advised him of the maximum sentence and fine that can be imposed as a result of his plea here?

MS. HARRIS-CALVIN: Yes.

THE COURT: Are you satisfied that he understood all your discussions with him?

MS. HARRIS-CALVIN: Yes, I am.

THE COURT: Do you understand -- do you think he understands the rights that he will be waiving by pleading guilty?

MS. HARRIS-CALVIN: Yes, I do.

THE COURT: Do you have any doubt about his competency to plead today?

MS. HARRIS-CALVIN: I do not.

THE COURT: Mr. John --

Thank you.

-- you have the right to remain silent. That means that you are not required to make any statements to

anyone that might incriminate you. If you choose to make a statement, you have the right to have your attorney with you at that time. If you have already made a statement, you do not have to continue. And if you start making a statement, you may stop speaking at any time. The reason these rights are so important is that if you do choose to make a statement, anything you say can, and very likely, will be used against you to prosecute you in this case or in other ways.

Do you understand those rights?

THE DEFENDANT: I understand.

THE COURT: And if you decide to plead guilty today, I will need to ask you questions about what you did that makes you guilty. I need to satisfy myself that you are, in fact, guilty of the charges to which you seek to plead guilty. So you will need to answer my questions and acknowledge your guilt. That means you will be waiving, in part, your right to remain silent and not to say anything that might incriminate you to tell me what you did.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Mr. John, you also have the right to be represented by counsel at every stage of these proceedings, and even if the you cannot hire an attorney or afford to hire one, one would be appointed to you throughout

the proceedings. Attorney -- the attorneys with you today are now representing in your case throughout this proceeding. Even if you did not plead guilty, you would have a right to an attorney.

Do you understand that?

THE DEFENDANT: That's understood.

THE COURT: Counsel, have you reviewed a copy of the Superseding Indictment?

MS. HARRIS-CALVIN: Yes, Your Honor.

THE COURT: Okay.

Mr. John, have you reviewed a copy of the Superseding Indictment against you?

THE DEFENDANT: Yes.

THE COURT: And have you discussed the charges, as well as the case in general with your attorney?

THE DEFENDANT: Yes.

THE COURT: Have you had sufficient time to discuss the charges with them and whether to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the counsel and advice given to you by them?

THE DEFENDANT: Yes.

THE COURT: I am now going to explain certain rights that you will be giving up if you plead guilty.

Mr. John, you have the right to continue to plead

not guilty. No one can be forced to plead guilty.
Do you understand that?
THE DEFENDANT: I understand.
THE COURT: If you were to continue to plead not guilty, you would have the right under the constitution and the laws of the United States to a speedy and public trial by a jury.
Do you understand?
THE DEFENDANT: I understand.
THE COURT: You would have the right to participate in the jury selection process with your counsel and to object to potential jurors.
Do you understand?
THE DEFENDANT: I understand.
THE COURT: At trial you would be presumed to be innocent, and the Government would have to prove you guilty beyond a reasonable doubt.
Do you understand?
THE DEFENDANT: I understand.
THE COURT: If you were to go to trial on the charges, the Government would have to prove with respect to the elements of the offense of Sexual Exploitation of a Child in violation of *Title 18, United States Code, Section 2551(a)* the following: First, the victim was under the age of 18;

Second, that the defendant used, employed, persuaded, induced, enticed, or coerced the victim to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct;

And third, the visual depiction was actually transported or transmitted in or affecting interstate or foreign commerce; the visual depiction was mailed or actually transported or transmitted in affecting interstate or foreign or interstate commerce; or that the defendant knew, or had reason to know, that the visual depiction would be mailed or transported or transmitted in or affecting interstate or foreign commerce; or that the visual depiction was produced using materials that had been mailed or transported in or affecting interstate or foreign commerce.

With respect to Count 2, the elements of the offense of Access With Intent to View Child Pornography in violation of *18 United States Code*, *2252(a)(4)(B)*, are as follows: First, the defendant knowingly accessed one or more visual depiction;

Second, the visual depiction was transported in or affecting interstate or foreign commerce where the visual depiction was produced using materials that had been transported in or affecting interstate or foreign or the offense was committed in the special maritime and the

territorial jurisdiction of the United States;

And third, the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and portrayed that minor engaged in that conduct;

And fourth, the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and portrayed a minor engaged in that conduct.

In addition, there is a forfeiture allegation simply putting you on notice that if you were convicted of either of the counts, the Government could seek to forfeit or seize from you property used to commit the crime or proceeds you obtained by committing the crime. As mentioned earlier, Mr. John, you would have the right to the assistance of counsel for your defense. Your counsel would represent you at trial and at every other stage of the proceeding.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: You would have the right to see and hear all witnesses, and have them cross-examined in your defense.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: You would have the right to not --

you would have the right not to testify unless you voluntarily elected to do so in your own defense.

Do you understand?

THE DEFENDANT: I understand.

THE COURT: You would have the right to compel the attendance of witnesses to testify in your defense.

Do you understand?

THE DEFENDANT: I understand.

THE COURT: Should you not decide to testify or put on any evidence at trial, these facts could not be used against you.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: Mr. John, by entering a plea of guilty and if I accept your plea, there will be no trial, and you will have waived or given up your right to a trial, as well as all the other rights associated with the trial that I have just described.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: You will have no right to appeal the conviction, though you still may be able to appeal the sentence that is eventually imposed by the Court. By pleading guilty, you give up the right to a jury trial on the charges. The Court will simply enter a finding of

guilty based on your guilty plea.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: And as I mentioned earlier, if you plead guilty, I will have to ask you questions about what you did to satisfy myself that you are guilty of the charges to which you seek to plead guilty, and you will have to answer my questions and acknowledge your guilt. By answering my questions, you will give up your right not to incriminate yourself.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Mr. John, do you understand each of the rights that I have just explained to you?

THE DEFENDANT: I understand.

THE COURT: If you are found guilty, you may lose other important rights, such as the right to vote, the right to hold public office, and the right to serve on a jury. Because you are proposing to plead guilty to a felony, you will lose the right to possess any kind of firearms or ammunition. You might also lose certain federal benefits. A DNA sample may be collected from you for analysis and indexing. The Government also reserves the right to notify any state or federal agency by whom you are licensed or with whom you do business, as well as any current or future

employer of the fact of this conviction.

And finally, your guilty plea may work to disadvantage you if in the future you are found guilty of another crime, because there is a possibility that you could receive a more severe penalty at that time because of this guilty plea and conviction. We call those collateral consequences of a conviction.

Do you understand them?

THE DEFENDANT: Yes.

THE COURT: I am also required to advise you of the immigration consequences that could potentially result from this conviction. If you are not a U.S. citizen, another result of pleading guilty is that one may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Removal and other immigration consequences would be the subject of a separate proceeding.

If you are a naturalized citizen of the United States, another consequence of pleading guilty may be that one is denaturalized and deported from this country and forbidden from re-entering the United States without the permission of the attorney general or other authority. Denaturalization, removal, and other immigration consequences will be the subject of a separate proceeding.

Do you understand that there could be immigration

consequences to your guilty plea?

THE DEFENDANT: I understand.

THE COURT: Do you understand that no one, including your attorneys or the Court, can predict with certainty the effect your conviction in this case could have on your immigration status?

THE DEFENDANT: Yes.

THE COURT: Do you still wish to plead guilty regardless of any immigration consequences that may result from your plea, even if those consequence include your removal from the United States?

THE DEFENDANT: Yes.

THE COURT: Mr. John, are you willing to give up your right to a trial and all of the other rights I've just explained to you?

THE DEFENDANT: I'm willing.

THE COURT: Did you have the opportunity to read and discuss the Superseding Indictment, and that is the written charge with your attorney?

THE DEFENDANT: Yes.

THE COURT: Did you understand it?

THE DEFENDANT: I understand it.

THE COURT: Counsel, have you had sufficient time to review the Superseding Indictment with your client?

MS. HARRIS-CALVIN: Yes, Your Honor.

THE COURT: Mr. John, do you have any questions about the Superseding Indictment?

THE DEFENDANT: No questions.

THE COURT: Has anyone made any promise to persuade you to plead guilty to the Superseding Indictment?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you in any way to persuade you to plead guilty to the Superseding Indictment?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: Yes.

THE COURT: Counsel, were all formal plea offers from the Government conveyed?

MS. HARRIS-CALVIN: Yes, Your Honor. There was one, and it was conveyed to him.

THE COURT: Okay.

I have already discussed the charges against you. I am now going to tell you about some of the possible penalties for the crimes charged. With regard to the consequences of pleading guilty for the single -- for Count Number 1 of the Superseding Indictment, the charge of Sexual Exploitation of a Child carries the following penalties: 30 years maximum term of imprisonment, 15 years minimum term of

imprisonment. The supervised release minimum term, 5 years; maximum supervised release term, life to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced up to 3 years without credit for pre-release imprisonment or time previously served for post-supervised release.

If the defendant commits any criminal offense under *Chapter 109A, 110, or 117* of *Title 18*, *United States Code, Sections 1201 or 1591* for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to not less than 5 years and up to life.

The maximum fine possible is $250,000. Restitution is mandatory to the full amount of each victim's losses as determined by the Court. And you will be required to pay a mandatory special assessment of $100.

Other penalties include mandatory additional special assessment of $5,000 pursuant to *18 U.S.C., Section 3014(a)*; assessment pursuant to *18 U.S.C., Section 2259(a)* of no more than $50,000; sex offender registration pursuant to the Sex Offender Registration Notification Act, *34 U.S.C. 20901*, *et sequentia*, formerly *42 U.S.C., Section 16901, et sequentia*; criminal forfeiture -- and criminal forfeiture, that is *18 U.S.C., Sections 2253(a) and 2253(b); and 21 U.S.C., Section 853(p)*.

With regard to Count 2, the charge of Access With

Intent to View Child Pornography, carries the following penalties: 20 years maximum term of imprisonment and no minimum term of imprisonment; minimized supervised -- minimum supervised release term of 5 years; maximum supervised release term, life, to follow any term of imprisonment. If a condition of release is violated, the defendant may be sentenced of up -- to up to two years without credits for pre-release imprisonment or time previously served on post-release supervision.

If the defendant commits any criminal offense under *Chapters 109A, 110, or 117 or 18 U.S.C., Section 1201 or 1591* for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to not less than 5 years, and up to the maximum term of imprisonment for the offense as set forth in *Paragraph 1A* above as noted, and that is noted by the Court.

The maximum fine is $250,000. Restitution is mandatory in the full amount of each victim's losses as determined by the Court. And you will be required to pay a mandatory special assessment of $100.

The other penalties include mandatory additional special assessment of $5,000 pursuant to *18 United States Code, Section 3014(a)*; assessment pursuant to *18 U.S.C., Section 2259(a)* of no more than $35,000; and sex offender registration pursuant to the Sex Offender

Registration Notification Act, *34 U.S.C., Section 20901, et sequentia*., and criminal forfeiture.

Do you understand the possible consequences of your plea that I have just gone through?

THE DEFENDANT: (No audible response.)

THE COURT: Sir?

THE DEFENDANT: I understand.

THE COURT: As I'm sure your counsel has advised, there are guidelines that must be followed by the sentencing judge in determining the appropriate sentence in your case. Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. These guidelines are advisory and would be considered by the sentencing judge, along with the particular facts and circumstances of your case, and all the sentencing factors set forth in *Federal Statute 18 United States Code*, *Section 3553(a)* in determining your sentence.

Mr. John, have you and your attorney discussed how these advisory sentencing guidelines might apply in your case?

THE DEFENDANT: Yes.

THE COURT: Has the Government estimated what the guidelines range is likely to be in this case?

MS. THEODORA: Yes, Your Honor. With an adjusted

offense level of 43 and considering the maximum penalty of 30 years imprisonment, the effective guidelines range is estimated to be 360 months, and the that assumes that the defendant is in Criminal History Category I, and that he received 2 points for acceptance of responsibility under *Section 3E1.1*.

THE COURT: Okay. Thank you.

Counsel, do you have a different estimate?

MS. HARRIS-CALVIN: Your Honor, I think we would likely have a *Fatico* hearing on some of these enhancements, but we -- I have spoken with the Government about their estimate. I relayed that information, discussed it with Mr. John. He understands that we have a different guidelines range, and he understands what the Court might tell him next about how the guidelines operate and the Court's ability to make those determinations at sentencing.

THE COURT: Okay.

So, Mr. John, what you should understand is that the estimates that have been provided by the Government and those estimates that may have been provided to you by counsel could be wrong. That the Court would not be able to determine the advisory guideline range for your case until after the Presentence Investigation Report has been prepared, and you and the Government would have the opportunity to read it and challenge the reported facts and

the application of the guidelines recommended by the probation officer.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: The sentence imposed may be different from any estimate that's provided.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And as we sit here today, there is no guarantee to -- as to a particular guideline range or sentence. The sentencing judge will have to determine that range and that judge is not required to sentence you within that range.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: The sentencing Judge has the authority in some circumstances to depart upward or downward from the advisory guideline range and will look at other sentencing factors under *18 United States Code, Section 3553(a)* that could result in a sentence that is either greater or lesser than the advisory guidelines.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: If the advisory guidelines range and the Presentence Report is different than the guideline range

advised here by either the Government or advised to you by your counsel or than what you may expect, you cannot take your plea back.

Do you understand that?

THE DEFENDANT: I understand.

THE COURT: If the ultimate sentence imposed is different than what you hoped for, you cannot take your plea back.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: You should also understand that there is no parole in the federal system and that if you were sentenced to prison, you will not be released on parole.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the rights that you are giving up, the punishments that you face, the Superseding Indictment, the nature of the charges, or anything else in this matter?

THE DEFENDANT: No.

THE COURT: Are you ready to plead guilty, Mr. John?

THE DEFENDANT: In a few minutes.

MS. HARRIS-CALVIN: I think he needs a moment.

THE COURT: Okay.

MS. HARRIS-CALVIN: Thank you.

(*Sotto voce* discussion.)

MS. HARRIS-CALVIN: Your Honor, can we take a five-minute break --

THE COURT: We can.

MS. HARRIS-CALVIN: -- so he and I can speak in the back?

THE COURT: We can.

MS. HARRIS-CALVIN: Thank you.

(Recess taken.)

THE COURT: Back on the record.

Counsel?

MS. HARRIS-CALVIN: We're ready to proceed, Your Honor. Thank you for the time.

THE COURT: Okay.

All right. Mr. John, are you ready to plead guilty?

THE DEFENDANT: No.

THE COURT: Okay.

Okay.

THE DEFENDANT: See you Monday.

THE COURT: Okay.

MS. HARRIS-CALVIN: Okay.

THE COURT: It looks like you all are going to trial on Monday, okay?

MS. HARRIS-CALVIN: Okay, thank you, Your Honor.

THE COURT: We stand adjourned.

MS. THEODORA: Thank you for your time, Your Honor.

(Matter adjourned to Monday, May 4, 2026 at 9:00 a.m.)

--ooOoo--

*I (we) certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/ David R. Roy* — *1st Day of May, 2026*

*DAVID R. ROY* — *Date*